[Civ. No. 994. Fifth Dist. July 18, 1968.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF MERCED COUNTY, Respondent; GREGORY FRANK-LIN GAFFNEY, Real Party in Interest.

166

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

John W. Ellery, Public Defender, for Real Party in Interest.

CONLEY, P. J.—This petition for a writ of prohibition and mandate, pursuant to the provisions of section 1538.5, subdivision (o), of the Penal Code, seeks to set aside an order of the Superior Court of Merced County suppressing evidence relative to counts I and II of an information charging breach of the law concerning the possession of marijuana and of marijuana plants. The trial court made such an order of suppression relative to the two charges, and the prosecuting officials seek to set aside such order and make available the forbidden evidence for use in the trial. The burden of proof in such circumstances is upon the state, and we cannot say that the trial court did not have substantial evidence in the record justifying the rulings made in the two instances under attack.

On the afternoon of February 6, 1968, Detective Earl Downey of the Merced Police Department went to the Gaffney residence in Merced because of some information which he had received but which is unspecified in the record. At that time he observed a small plant, which he thought might be marijuana, in a pot through a window of the residence. However, he was not certain; therefore, he took pictures of the plant and two days later, on the afternoon of February 8, 1968, returned to the Gaffney residence accompanied by Richard Walley, an experienced narcotics agent of the State Bureau of Narcotic Enforcement. Walley had been called in

by Downey to make, if possible, a positive identification of the plant. The officers parked in front of the Gaffney residence and looked through a corner bedroom window where they could see a small gray bowl with some small green plants in it. The window was approximately 50 feet from the curb, and Walley could not identify the plants from that distance. There was no path in front of the window, but it was a worn area. The window was approximately 10 to 12 feet from the front door. Agent Walley got out of the car and walking up very close to the window peered at the plants. Walley testified that at that time he physically identified the plants as *"possibly"* marijuana.

Walley and Downey then went to the front door of the Gaffney residence. Agent Walley knocked and Mr. Gaffney, father of the real party in interest, came to the door. Walley showed his badge and identification cards and then asked whose bedroom it was, pointing in the direction of the corner room. Mr. Gaffney said that the room was occupied by his son, Gregory Gaffney and his brother. Agent Walley then told Mr. Gaffney that the plant in the window was marijuana and that he had to take it. The officers entered the Gaffney home and, apparently without objection by the senior Mr. Gaffney, went into the bedroom. Walley took possession of the gray bowl containing five small plants. He noticed another bowl on a desk next to the window containing marijuana seeds and he also took it. He then searched the bedroom and found a plastic vial containing a small, partially smoked, brown, hand-rolled cigarette in the left coat pocket of a jacket hanging in the bedroom closet. While the officers were in the bedroom, Mr. Gaffney asked if they had a search warrant. They had no warrant. The officers then left, taking the plant, seeds and cigarette.

After the seizure of these items, Agent Walley caused a broadcast to be made by the Merced Police Department for the apprehension of Gregory Gaffney.

James Draper, a Merced police officer, was patrolling the city streets in a police automobile with Reserve Officer Kellogg. They received instructions by radio which Draper understood had been issued by Detective Downey to pick up Gregory Gaffney. This broadcast described him as having long, dark blond hair, a caramel-colored jacket with a fur collar, and a yellow, ivy league type shirt. When the officers halted their car at a stop sign at 17th and "J" Streets, they saw three boys standing on the corner talking. One of them

168

matched Gaffney's general description. The officers stopped and asked the three for identification; all of them produced identification, and, when the one who matched the description in the broadcast identified himself as Gregory Gaffney, Officer Draper instructed the other boys to go on their way but detained Gregory. The officer testified that he did not recall whether Gaffney asked him specifically whether he was under arrest. The officer testified that he said, "I suppose you know what this is about," and that Gaffney nodded his head affirmatively. Gaffney, on the other hand, testified that Draper said he did not know what the apprehension order was about, whether it was for questioning or for identification of persons. Gaffney also testified that he asked Draper if he was under arrest and that Draper said, "No."

Officer Draper then advised the headquarters of the Merced Police Department that he had Gaffney in custody, and Officer Draper was instructed to handcuff him and bring him in. Officer Draper then searched Gaffney and found a packet which he handed to Officer Kellogg. Gregory was handcuffed and put back in the police car. The officers then took Gaffney to the Merced Police Department. The packet was later found to contain marijuana.

The respondent court granted the motions to suppress the marijuana plants, the bowl of seeds found in the defendant's bedroom and the packet of marijuana found on his person. The magistrate at the preliminary examination had already suppressed the "roach" or partially smoked cigarette.

■ Turning first to the suppression of the marijuana plants as ordered by the court, the view of these plants growing in the window was not a search. The plants were in plain sight, and it was legitimate for the officers to view them through the window. (*People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Willard,* 238 Cal.App.2d 292, 297 [47 Cal.Rptr. 734].)

It does not appear that Officer Walley positively identified the growing marijuana plants as such. He testified only that he thought that they were possibly marijuana plants. It does not appear, furthermore, that there was a free and voluntary invitation by the father of the defendant to the officers to enter the house; Officer Walley had told him that he had to take the plants, and it seems clear that the officers were intent upon entering the house and that if there was wish on the part of Mr. Gaffney to prevent the entry he was overridden; he did ask whether the officers had a search warrant, and they

did not have one, even though Officer Downey had had two days from the time he first noticed the plants through the window within which to get a search warrant. There can be no question that the taking of the marijuana seeds and the half smoked cigarette was unjustified under any theory. It should be observed that the Attorney General does not here challenge the suppression by the trial court of the plants or of the bowl of seeds taken from the Gaffney home.

In making his ruling for the suppression of the evidence, the trial court made the following observations:

''Well, I think that no authority has been given to me that indicates that there was a proper proceeding in this case, and I hate to do it, frankly, because there is no question in my mind but what Mr. Gaffney possessed a plant, that it was there, he was inviting people to come in, and I think that's the grossest kind of display—against authority I can picture. So far I am concerned, it hurts me as to the point with regard to the plant to have to say that the officers' action was improper, but on the other hand, so far as the officers are concerned, I could make some comments to them, too, because the officer says he saw it on the 6th. He went back on the 8th and he and Walley are there and there was a tremendous amount of time to get a search warrant, and perhaps it's simply the idea they thought they, as Mr. Spaulding does, they didn't have to get a search warrant. I think they do.

''As to the seizure of the plant—now, I'm talking about the seizure of the plant, the fact they observed it through the window may still be a sufficient thing to support the possession, so far as the plant which was seized, the motion is granted.

''Now I don't think the officers had any right to be there and as a result with regard to the matter of the seeds which they found while they were there, the motion is likewise granted. I certainly don't think Mr. Gaffney is off the hook with regard to the plant because, as I say, I think the officers saw it. I think they identified as being a marijuana plant.''

Turning to the suppression of the packet of marijuana taken from the defendant on the public streets prior to his arrest, the trial court commented:

''Now when it comes to the matter of the packet on 17th Street, I think we should have reason to be concerned about the fact that without any arrest, with the simply stop and frisk, police officers stop a man on the authority of somebody else's call who says hold him. Don't let him put his hands in

his pockets. Then they make a search, no arrest. Now the officer denies that he made an arrest in this case. He specifically states, no, he did not make an arrest. No, he didn't do this. He was simply holding him upon the authority from somebody else. Now if he had indicated he thought he was making an arrest, I think maybe he would have been supported by the facts because in my opinion he certainly stopped him, he detained him. He did everything short of intending to an [and] actually doing it. But I think, again, under the circumstances where no arrest was apparently contemplated and there is nothing that ties the two things together very well the motion is granted with regard to the packet.

''Now as I say, I don't think the suppression of this evidence means that the defendant has suppressed a sufficient amount of evidence to cause a dismissal of all the charges. Now it's my understanding that the only matter that was before the court was the matter of the motion to suppress.''

■ It should be kept in mind that the evidence as given by the defendant and the two young men with him does not check by any means with the testimony given by Officer Draper. But it is quite apparent that if, as here, there is a difference in testimony of substantial nature the trial court is under the duty to take whichever evidence on a contested point seems to it to be the truth. The fact that Officer Draper does not concede everything that the testimony of other witnesses shows is not important in view of the finding of the trial court.

The defendant Gaffney testified that he was stopped by two officers at the intersection of 17th and ''J'' Streets in Merced, and that after they identified themselves the other two boys were told not to remain; however, they stayed in the vicinity long enough to be able to corroborate Gaffney as to what took place. Gaffney asked what the matter was all about, and the officer replied that he did not know whether the defendant was stopped for questioning or identification. Gaffney asked if he was under arrest, and the officer replied, ''No.'' The defendant was directed to get into the police car, and he overheard a radio communication in the car whereby Officer Draper requested and received instructions regarding Gaffney. At this point, defendant was removed from the police car, and he again asked, ''Am I under arrest?'' To this the reply was again, ''No.'' While he was out of the car, the officers conducted a search of his person and removed the

packet of marijuana. Handcuffs were then placed on the defendant and he was told, "This is what we have you for now."

The two young men who had been with Gaffney, witnesses Guerra and Langley, supported the evidence of Gaffney with regard to the sequence of events. Langley gave testimony that the officers initially stated the purpose of the interview was "to identify somebody" or "something routine," and that, even after the radio conversation, the officers denied prior to their search that Gaffney was under arrest.

James Draper of the Merced City Police Department testified that, accompanied by a reserve officer, he originally received instructions by radio "to pick up Greg Gaffney," and a physical description of Gaffney. Observing the defendant and his companions at 17th and "J" Streets, Draper stopped them and, having identified Gaffney, dismissed the defendant's companions. Draper sought further instructions from radio control at police headquarters in order "to determine what they wanted done with Mr. Gaffney. I had him detained, now what did they want done with him." Officer Draper was told to handcuff him and bring him in. The officer then searched the defendant and found the packet containing marijuana, and afterwards placed Gaffney under arrest for the possession of the packet. At this point, handcuffs were placed on Gaffney and he was taken to the headquarters of the Merced Police Department. The officer was never instructed to arrest Gaffney. He did not tell the defendant that he was under arrest, and he did not know, prior to the search, of the existence of any facts or charges which would warrant an arrest.

Section 841 of the Penal Code provides: "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, . . ." Officer Draper did not know the facts which the police department contends were the cause of the arrest. He was not informed by headquarters as to why, if at all, an arrest should be made, and he was by his own admission totally ignorant of any cause to warrant an arrest. Yet, he made a search of the person of the defendant, prior to any purported arrest on his part, and obtained the package of marijuana from the defendant at that time.

The asserted arrest by Officer Draper did not conform with the requirements of the Penal Code. ■ While failure to

observe these statutory requirements may be overlooked when necessary for the safety of an officer, for the preservation of evidence, or in order to prevent the commission of a crime, such failure will render any evidence found inadmissible if such unusual circumstances do not exist. (*People* v. *Rosales*, 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Marshall*, *(Cal.App.) 64 Cal.Rptr. 690; *People* v. *Gastelo*, 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706].) ■ A detention purporting to be an arrest carried out in an unlawful manner is invalid; the courts will not countenance incriminating incidents accompanying an arrest which is unlawful. (*Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23]; *Gascon* v. *Superior Court*, 169 Cal.App.2d 356 [337 P.2d 201]; *People* v. *Rosales, supra*, 68 Cal.2d 299.)

The petition for a peremptory writ of prohibition or mandate is denied, and the temporary stay order set aside.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied August 15, 1968, and petitioner's application for a hearing by the Supreme Court was denied September 11, 1968. Mosk, J., was of the opinion that the petition should be granted.

---

*A hearing was granted by the Supreme Court on February 14, 1968. The opinion of that court, filed July 19, 1968, is reported in 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665].