[Crim. No. 14334. Second Dist., Div. Two. Oct. 23, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. ANDREW HEARD, Defendant and Respondent.

748

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, and James L. McCormick, Deputy Public Defender, for Defendant and Respondent.

HERNDON, J.—The People appeal from an order granting defendant's motion to set aside an information under Penal Code section 995. ▆▆▆ We have concluded that the order must be reversed.

Initially, it may be noted that respondent errs when, citing *People* v. *Superior Court,* 264 Cal.App.2d 165, 166, 170 [70 Cal.Rptr. 362], he argues that we are bound by the findings of fact impliedly made by the superior court and that we may reverse its determination only if we conclude that the People have sustained their ''burden of proof'' and demonstrated that the superior court ''did not have substantial evidence in the record justifying [its] rulings.'' The true rule is exactly the converse.

The appellate court in *People* v. *Superior Court, supra,* was considering a petition for writ of mandate filed by the People pursuant to the provisions of section 1538.5, subdivision (o) of the Penal Code. ▆▆▆ A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact. However, in considering a motion to dismiss under Penal Code section 995, the superior court is sitting as a reviewing court and is bound by the rules enunciated in *Perry* v. *Superior Court,* 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529] : ''Although the magistrate, in reaching his decision [to hold an accused to answer following a preliminary hearing], may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, *such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order.* [Citation.]'' (Italics added.)

The propriety of this rule is particularly apparent when, as in the instant case, the superior court sitting as a court of

review under Penal Code section 995 is asked to consider a terse and limited record of a preliminary hearing involving an issue that may be relitigated in a full and adversary hearing either at the time of trial or at a hearing upon a defendant's motion to suppress evidence under Penal Code section 1538.5. As aptly stated in *Badillo* v. *Superior Court,* 46 Cal.2d 269, 271-272 [294 P.2d 23] :

"No problem is presented in applying this rule [excluding illegally obtained evidence] in cases involving searches and seizures in which the facts bearing on the legality of the search or seizure are undisputed and establish as a matter of law that the evidence is or is not admissible. In many cases, however, the evidence before the magistrate bearing on this issue may be in conflict or susceptible of conflicting inferences or consist *only of the testimony of prosecution witnesses,* and under these circumstances the court in ruling on a motion to set aside the information will frequently not be in a position to make a *final* determination as to the admissibility of the evidence. *Accordingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue."* (Italics added.)

The undisputed testimony given at defendant's preliminary hearing in the instant case provides ample support for the magistrate's order requiring him to answer to the charges against him. Officer Whitefield of the Los Angeles Police Department testified that on the night of February 19, 1967, at approximately 11:30 p.m., he noticed defendant seated alone in a car which was parked in a poorly lighted location. The officer observed that defendant fitted the reported description of the person who had committed an armed robbery at 8:45 p.m. that night at a location about one mile therefrom. The robber had been described as a male Negro, approximately 6 feet tall, 175-180 pounds, well dressed in light-colored clothing. with processed hair.

Since the defendant had chosen to park his car in an area where the light was poor, the officer asked him to step from his car in order to guard against sudden assault and to more accurately judge defendant's height and weight than was possible while he remained seated. As indicated, defendant matched the physical description given and he was well

dressed in a white shirt and light coat. His hair was processed.

Because the perpetrator of the reported robbery had been armed, the officer properly patted defendant down for lethal weapons before proceeding with his investigation. Appellant was found to be armed with a concealed pistol and a tear gas gun in violation of Penal Code sections 12025 and 12420.

■ On the basis of the foregoing summary of the evidence, we conclude that the instant case requires application of the long-established California rule relating to temporary detentions.[1] "In this state . . . we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may in self-protection request a suspect to alight from an automobile or to submit to a superficial search for concealed weapons. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. [Citations.]"[2] (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].)

Although it does not appear that there was ever a federal rule to the contrary (cf. *People* v. *Cowman,* 223 Cal.App.2d 109, 112 et seq. [35 Cal.Rptr. 528]), any doubt on this question was dispelled by the recent United States Supreme Court decision in *Terry* v. *Ohio,* 392 U.S. 1, 26-27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868, 1882-1883], which held: "It does not follow that because an officer may lawfully arrest a person only

[1]We do not hold that probable cause to arrest may not exist where a man fitting the description of an armed robber is discovered shortly after the commission of the crime in the near vicinity thereof. We need not consider this question in the instant case, however, for it is here conceded that "the policemen approached the standing [car] only for the purpose of routine interrogation, and that they had no intent to detain [defendant] beyond the momentary requirements of such a mission." (*Rios* v. *United States,* 364 U.S. 253, 262 [4 L.Ed.2d 1688, 1694, 80 S.Ct. 1431].)

[2]The California decisions cited in *Mickelson* are *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52] (two men i.. a parked automobile on lover's lane at night); *People* v. *Blodgett,* 46 Cal.2d 114, 116-117 [293 P.2d 57] (several parties entering the same double parked taxi at 3 a.m.); *People* v. *Beverly,* 200 Cal.App.2d 119, 122 [19- Cal.Rptr. 67] (officer testified that his attention was attracted to the car because " 'it was kind of unusual for a car to be coming out of that area at that time . . . all the auto wreckers at that time is usually closed.' '"); *People* v. *Anushevitz,* 183 Cal.App.2d 752, 753 [6 Cal.Rptr. 785] (automobile having no registration displayed); *People* v. *King,* 175 Cal.App.2d 386, 388 [346 P.2d 235] (car similar to one reportedly used in a robbery).

when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest. Moreover, a perfectly reasonable apprehension of danger may arise long before the officer is possessed of adequate information to justify taking a person into custody for the purpose of prosecuting him for a crime. Petitioner's reliance on cases which have worked out standards of reasonableness with regard to 'seizures' constituting arrests and searches incident thereto is thus misplaced. It assumes that the interests sought to be vindicated and the invasions of personal security may be equated in the two cases, and thereby ignores a vital aspect of the analaysis of the reasonableness of particular types of conduct under the Fourth Amendment. See *Camara* v. *Municipal Court, supra* [387 U.S. 523, 534, 536-537 (18 L.Ed.2d 930, 938, 939-940, 87 S.Ct. 1727) (1967)].

''Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. *Beck* v. *Ohio,* 379 U.S. 89, 91 [13 L.Ed.2d 142, 145, 85 S.Ct. 223] (1964) ; *Brinegar* v. *United States,* 338 U.S. 160, 174-176 [93 L.Ed. 1879, 1889-1891, 69 S.Ct. 1302] (1949) ; *Stacey* v. *Emery,* 97 U.S. 642, 645 [24 L.Ed. 1035, 1036] (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. *Brinegar* v. *United States, supra.* ''

In deciding this case we need not undertake to determine the ''mathematical probability statistics'' (cf. *People* v. *Collins,* 68 Cal.2d 319, 327 [66 Cal.Rptr. 497, 438 P.2d 33]) of any given person being (1) male; (2) Negro; (3) 6 feet tall; (4) 175-180 pounds; (5) well dressed; (6) in light colored clothing; and (7) with processed hair. It is our holding that when an officer observes a person fitting all these specifications

sitting alone at 11:30 at night in a parked car in a poorly lighted location a mile from the scene of an armed robbery committed only 2½ hours earlier by a man similarly described by his victims, the officer employed to protect the vital interests of society acts properly in the performance of his duties when he proceeds to investigate in a reasonable manner. We hold that under the circumstances of this case a police officer should be permitted to conduct a superficial search for concealed weapons before proceeding to interview a potentially dangerous suspect.

In *People* v. *Hawxhurst,* 264 Cal.App.2d 398 [70 Cal. Rptr. 253] (hearing denied), an order granting the defendant's motion to dismiss under Penal Code section 995 was reversed. That case presented the identical issue of law that is determinative here and in a very similar factual setting. Indeed, the description of the perpetrator of the reported crime in the case at bench was more detailed and fitted the defendant more precisely. The sound reasoning of the decision in *Hawxhurst* is equally applicable here.

As aptly expressed in the majority opinion in *Terry* v. *Ohio, supra,* 20 L.Ed.2d 889, 907: "We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.[21]"

In footnote 21 of its opinion, the court noted that: "Fifty-seven law enforcement officers were killed in the line of duty in this county in 1966, bringing the total to 335 for the seven-year period beginning with 1960. Also in 1966, there were 23,851 assaults on police officers, 9,113 of which resulted in injuries to the policemen. Fifty-five of the 57 officers killed in 1966 died from gunshot wounds, 41 of them inflicted by hand-guns easily secreted about the person."

These facts undoubtedly were in the mind of Justice Harlan when, in his concurring opinion in *Terry,* he stated at page 913 [20 L.Ed.2d]: "Where such a stop is reasonable,

however, the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulate suspicion of a crime of violence. Just as a full search incident to a lawful arrest requires no additional justification, a limited frisk incident to a lawful stop must often be rapid and routine. There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, *should have to ask one question and take the risk that the answer might be a bullet.*" (Italics added.)

The order under review is reversed.

Roth, P. J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 18, 1968. Peters, J., was of the opinion that the petition should be granted.