[Crim. No. 15310.   Second Dist., Div. One.   Dec. 6, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. EDWIN ALFRED BAKER, Defendant and Appellant.

Richard S. Buckley, Public Defender, and James L. Mc-Cormick, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller, Lawrence K. Keethe and Mark L. Christiansen, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of receiving stolen property.

In an information filed in Los Angeles on March 21, 1967, defendant was charged in count 1 with having burglarized the residence of Gayle E. Drum on January 27, 1967, and in count 2 with having received property which had been stolen from Gayle E. Drum. Defendant pleaded not guilty and made a motion under section 1538.5 of the Penal Code. The cause came on for trial and the matter was submitted upon the testimony contained in the transcript of the proceedings had at the preliminary hearing. Defendant was found guilty of receiving stolen property (count 2) and not guilty of burglary (count 1). At the time of sentencing the proceedings were suspended, defendant was fined $350 and probation was granted for four years. A timely notice of appeal was filed.

Appellant asserts now that the appeal was taken because the trial judge erred in not granting his motion to suppress the evidence under section 1538.5 of the Penal Code.

A résumé of some of the facts is as follows: on February 17, 1967, at about 4:15 p.m. Officer Brown, a police officer of eleven years experience in the Los Angeles Police Department and then working out of the Detective Bureau, Burglary—Auto Theft Division, Special Squad, went to defendant's residence at 5727 Harold Way, Apartment 3. Officer Brown was accompanied by Officer Smith of the same division. Officer

Brown had two warrants for the arrest of defendant for certain violations of the vehicle laws. At the time of the arrest the officers had heard from Sergeant Wheeling of the robbery division that defendant was a burglar and had two stolen furs in his apartment. Officer Brown upon arriving at the Baker apartment knocked on the door and defendant replied to the knock. Officer Brown asked defendant if he was the person named in the warrants and he replied that he was. The officers identified themselves and placed defendant under arrest and advised him of his constitutional rights. Defendant was partly dressed when he came to the door. He made inquiry as to the amount of the bail and when advised that it was $77 he asked if he might make a telephone call. He stepped back into a living room and the officers stepped in behind defendant. The telephone call was not completed and defendant asked if he could put on a shirt and received an affirmative reply from Officer Brown. On the living room floor in plain sight was an eight millimeter movie projector with an orange or yellow painted area at its base and it appeared as if something, such as a serial number, had been scratched off the surface of the painted area. Officer Brown stated that the Los Angeles City Board of Education, to identify property belonging to the schools, commonly painted an area at the base of movie projectors with yellow or orange paint and stamped thereon a serial number. Officer Brown formed the opinion that the projector might well have been stolen property. There was also a small television set on a coffee table in the room. Officer Brown asked defendant to whom the projector and television set belonged and defendant stated they belonged to a bartender friend of his but remained silent as to the man's name. Officer Brown then asked defendant if he might search the apartment and defendant said, "Yes, you can search my apartment." Shortly thereafter Officer Smith found Lawrence Higbee in the apartment and the latter stated that he knew nothing about the projector or the television set.

In the defendant's bedroom Officer Brown found two labels, one bearing the name Firman, and the other bearing the name Pelta and three monogram-type initials, G.E.D., which appeared to have been removed from some garment. In the closet of the bedroom Officer Brown found 155 reels of eight millimeter film of pornographic nature. In the living room closet in a shopping bag on the floor the officer found a fur stole from which the label inside the lining appeared to have been removed. There also was another movie projector in that closet. Officer Brown formed the opinion that the pro-

jector on the living room table and the fur stole were stolen property.

Officer Brown then asked defendant if he might search defendant's car which was parked in the street and defendant said, "Yes, you can," and gave the car key to the officer. In the trunk of the car the officer found a second fur stole also with the label removed. The labels found in the defendant's bedroom were rectangular in shape while the three initials G.E.D., each one on a separate piece of cloth, were diamond-shaped. It appeared to the officers that the three diamond-shaped initials found in the defendant's bedroom were of the same type and shape as those which had been removed from the stole located in the trunk of defendant's car. Defendant never asked whether the officers had a search warrant and the subject of such was not mentioned.

Defendant testified that on the date and time in question the officers came to his apartment and identified themselves as policemen. Defendant was asked by his attorney, "At the time he [the officer] arrived at your apartment to your knowledge was there some goods in the apartment which were stolen?— When I say 'to your knowledge'—to your belief?" Defendant replied, "Well, there was a few articles I would say I was in doubt about the origin of them." He indicated that he had bought the projector from a fellow but had no bill of sale, that he had taken the labels out of the furs because he was going to give them to a girl friend.

Appellant now contends that the property found in the apartment should not have been received into evidence because it was the product of an illegal search and seizure in that the officers had no basis for a search. Further that it was error to receive the stolen items into evidence because appellant was not advised that he had a right to refuse to give a consent to search the apartment.

There is no merit to appellant's assertions.

There was no search in the first instance for the projector and the television set were in plain sight—the officers were where they had a right to be when they saw the items which were suspect. (See *People* v. *Marshall,* 69 Cal.2d 51, 57-58 [69 Cal.Rptr. 585, 442 P.2d 665].) Probable cause is ". . . a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) A reasonable man in the position of Officer

Brown, seeing the projector with the painted area on the base and the appearance that a serial number had been scratched off, would have been led to believe and conscientiously entertain an honest and strong suspicion that appellant was guilty of some crime.

Appellant seems to argue now that it was unfair of the officer to make the arrest because he previously had been alerted that appellant was a burglar. All the officer did here was to be where he had a perfect right to be and to see that which was in plain sight. (See also *People* v. *Kraps,* 238 Cal. App.2d 675, 680 [48 Cal.Rptr. 89].)

The appellant gave consent to the search in any event. The issue as to whether there was consent is a question of fact and that fact was determined by the trier of fact on conflicting evidence. There was substantial evidence to support the view that consent was given and this court under the circumstances should not disturb the finding of consent. The simple fact is obvious that the trial judge did not believe the appellant and he did believe the officers.

The request for permission to search did not require a warning to appellant that a consent might be refused. This court said in *People* v. *Chaddock,* 249 Cal.App.2d 483, 485-486 [57 Cal.Rptr. 582]: ▮ ''There is no requirement in the law that an officer shall first advise a person of his constitutional rights and of his right to refuse to grant a consent to a search before the officer seeks a valid consent from the person to conduct a particular search. The mere asking of permission to enter and make a search carries with it the implication that the person can withhold permission for such an entry or search.'' (See also *People* v. *Sjosten,* 262 Cal.App.2d 539, 546 [68 Cal.Rptr. 832] ; *People* v. *Dahlke,* 257 Cal.App.2d 82 [64 Cal.Rptr. 599] ; *People* v. *Smith,* 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 27, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 29, 1969.