[Civ. No. 10097. Fourth Dist., Div. Two. June 25, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF
SAN BERNARDINO COUNTY, Respondent;
NOAH J. THOMAS, Real Party in Interest.

**COUNSEL**

Lowell E. Lathrop, District Attorney, and Kenneth W. Nydam, Deputy District Attorney, for Petitioner.

No apearance for Respondent.

Carl T. Rimbaugh for Real Party in Interest.

**OPINION**

**TAMURA, Acting P. J.**—The People seek a writ of mandate commanding respondent court to vacate an order made pursuant to section 1538.5 of the Penal Code suppressing certain evidence seized from the home of real party in interest (defendant).

An information has been filed charging defendant with three counts of receiving stolen property, count I with receiving a Magnavox color television set belonging to Mrs. Esther Hull, count II with receiving a Magnavox color television set belonging to Mr. Fritz Kupher, and count III with receiving certain power tools belonging to Enoch Wood. The items described in the information, along with numerous other articles, were seized from defendant's house when he was arrested for the offense charged in count I. Following defendant's motion under section 1538.5 and an extended hearing thereon, respondent court denied the motion with respect to the color television set described in count I but granted it as to all other items seized.

The evidence adduced at the motion to suppress may be summarized as follows:

Detective Mayfield of the San Bernardino County sheriff's office testified as follows: In the course of a burglary investigation he learned from

one of the suspects, Danny Ballejos, that the latter sold defendant a Magnavox color television set which he and others had stolen from the Hull residence. The officer testified that Ballejos related that he and his companion took the television set to defendant because the latter was reputed to be a fence dealing in television sets and typewriters. At about 8 p.m. on April 11, 1969, Mayfield accompanied by three other officers went to defendant's residence to investigate the alleged sale of the stolen television set to defendant. The officers had no search or arrest warrant. Mayfield knocked on the door and defendant answered. Mayfield identified himself, stated the purpose of his visit and asked defendant if he owned a color television set and whether the officers could check it. Defendant stated he owned such a set and invited Mayfield to enter the house. Upon entering Mayfield observed a Magnavox color television set near the door, checked the serial number, and found that it matched the number of the stolen set. When asked how he acquired the set defendant stated he purchased it from a man who was separating from his wife. Mayfield arrested defendant and advised him of his rights. By this time the other officers had entered the house. They thereafter conducted a search of the house and seized numerous articles which they suspected had been stolen, including two additional color television sets, power tools, appliances, miscellaneous tools, musical instruments, a .22 revolver and a rifle.

As to each item seized Mayfield gave reasons for his belief that it was stolen. As to the two additional color television sets, he testified that they both appeared to be new; one had not been connected for use; and defendant failed to give a satisfactory explanation as to how he had acquired them. He based his suspicion that the other items seized had been stolen on the fact that some still had price tags on them; certain articles which defendant said he obtained from "surplus," bore no marks indicating prior government ownership; as to some items defendant gave no satisfactory explanation for their possession and failed to produce receipts for their purchase; and as to some articles on the ground that they were of the type usually stolen by narcotics addicts because of their ready convertibility to cash. Other than the one color television set, the officers had no actual knowledge that the items had been stolen.[1]

Defendant and his wife testified that the officers entered the house without consent and conducted the search over their objections. Defendant testified that after he was arrested and handcuffed, he was harassed by the officers, was not permitted to offer explanations for his possession of the articles seized, and denied that officers asked for an explanation with

---

[1]The record reveals that it was subsequently learned that one of the Magnavox color television sets, other than the one belonging to Mrs. Hull, had been stolen.

respect to the two additional color television sets. Defendant also testified that he was in the business of selling used merchandise.

The trial court determined that defendant consented to the officer's entry into the house, that probable cause to arrest existed, and that the subsequent search of the home was justified as an incident to the arrest. However, except as to the one color television set, the court found that the officers acted unreasonably in seizing the articles sought to be suppressed.

The information furnished by Ballejos was corroborated by Mrs. Hull and by defendant's possession of the stolen television set. Accordingly, the arrest was valid and the officers were entitled to conduct a search incident thereto. As the trial court properly determined, the permissible scope of the search was governed by pre-*Chimel* standards (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; *People* v. *Edwards,* 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713].) Under pre-*Chimel* standards the subsequent search of the house for other stolen articles was justified. (See *Skelton* v. *Superior Court,* 1 Cal.3d 144, 155-156 [81 Cal.Rptr. 613, 460 P.2d 485].) The only question, therefore, is whether the officers acted reasonably in seizing the items which were suppressed.

■ Both the Fourth Amendment and article I, section 19, of the California Constitution, protect one against an unreasonable seizure as well as an unreasonable search. ■ "Probable cause" for Fourth Amendment purposes means substantially the same as "probable cause" for purposes of arrest without a warrant. (*Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 149-150; *Williams* v. *Justice Court,* 230 Cal.App.2d 87, 94 [40 Cal.Rptr. 724].) "Probable cause" for the issuance of a search warrant has been held to be "approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury [citations], namely, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused." (*Skelton* v. *Superior Court, supra,* at p. 150.) "Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (*People* v. *Ingle,* 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344]; see *People* v. *Hall,* 62 Cal.2d 104, 107, fn. 3 [41 Cal.Rptr. 284, 396 P.2d 700].)

■ The reasonableness of the officers' actions in seizing the items in question should be tested by the foregoing standards. If the facts known

to the officers, including the nature of the articles and the circumstances under which they were found, were sufficient to indicate to a reasonable man that they were stolen, the seizure was valid. (*People* v. *Superior Court,* 274 Cal.App.2d 7, 12 [78 Cal.Rptr. 757]; *People* v. *Baker,* 267 Cal.App.2d 916 [73 Cal.Rptr. 455]; *People* v. *Ransome,* 180 Cal.App.2d 140, 146 [4 Cal.Rptr. 347]; *People* v. *Wright,* 153 Cal.App.2d 35, 39-40 [313 P.2d 868].)

The question whether the officers had reasonable cause to suspect that the items seized were stolen was a matter to be determined by the trial court on the evidence presented at the motion to suppress. ■ The purpose of a 1538.5 proceeding is to determine "the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing." (Pen. Code, § 1538.5, subd. (i); *People* v. *Superior Court,* 275 Cal.App.2d 489, 493 [79 Cal.Rptr. 904].) It is a proceeding in which following a full hearing, the superior court acts as a finder of fact. (*People* v. *Heard,* 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374]; see *People* v. *Superior Court,* 264 Cal.App.2d 165, 166 [70 Cal.Rptr. 362].) In reviewing a determination of a trial court on a 1538.5 motion, the function of the reviewing court is to determine whether there was substantial evidence to support the trial court's findings. (*Bergeron* v. *Superior Court,* 2 Cal.App.3d 433, 436 [82 Cal.Rptr. 711]; *People* v. *Superior Court,* 71 Cal.2d 265, 274 [78 Cal.Rptr. 210, 455 P.2d 146].)

■ In the present case the trial court determined on conflicting evidence that defendant consented to the officers' entry into the house and that the officers had probable cause to arrest defendant. There was substantial evidence to support those determinations.

However, the court's determination that all articles (except the one color television set) should be suppressed may not be sustained. The record discloses that the court's determination was based on (1) its belief that the scope of the search may have been limited to a search and seizure of evidence of the crime for which defendant was arrested, and (2) that the officer's explanation that the articles were "the kind of things that are usually stolen" was insufficient to form the basis for a reasonable cause to seize.

Under pre-*Chimel* standards applicable to the instant case the officers were entitled to search for other stolen articles. A valid distinction exists between an exploratory search incident to an arrest for the sole purpose of discovering evidence of other unrelated crimes (see *People* v. *Mills,*

148 Cal.App.2d 392, 399 [306 P.2d 1005]) and a search for evidence relevant to the crime for which the arrest was made (see *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 158-159). Defendant's possession of other stolen goods would obviously be relevant to the charge for which he was arrested; it would be relevant to prove an essential element of the crime, namely, knowledge of the stolen character of the color television set belonging to Mrs. Hull. (1 Witkin, Cal. Crimes (1963) 395-397.) While the trial judge recognized the inapplicability of *Chimel* to the instant case, he nevertheless expressed some concern as to its possible effect on the reasonableness of the scope of the search even under pre-*Chimel* standards. But the need for such concern has been obviated by *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144.

■ We turn to the second basis for the court's order of suppression, namely, the absence of reasonable grounds for believing that the items seized had been stolen. As to some of the items, such as the musical instruments, lawnmower, and possibly certain other articles, suppression might have been justified on the ground that the only explanation for their seizure was that they were items commonly stolen because of their ready convertibility to cash. As to many other articles, however, the officer gave additional specific reasons which, when coupled with the circumstances of defendant's arrest and all of the information then in possession of the officer, were sufficient to indicate to a reasonable mind that they had been stolen. Officer Mayfield had received information from Ballejos that he and his companion took the stolen color television set to defendant because he was reputed to be a fence dealing in television sets and typewriters. In these circumstances defendant's possession of the stolen set coupled with his failure to offer satisfactory explanation for the possession of two more apparently new color television sets was sufficient to raise a strong suspicion in a reasonable mind that the latter two were also stolen. As to many other items, the officers gave specific reasons for believing that they were stolen; some items still carried price tags and some which defendant claimed to have acquired at "surplus" bore no markings indicating prior government ownership. Those facts, considering the nature of the articles and the circumstances of their discovery, were sufficient to give rise to a reasonable suspicion that they were stolen. The mere fact that room for doubt existed did not preclude a finding of probable cause for their seizure. (*People* v. *Hall, supra,* 62 Cal.2d 104, 107, fn. 3; *People* v. *Ingle, supra,* 53 Cal.2d 407, 413.)

■ Although there was a conflict in the evidence as to whether defendant was afforded an adequate opportunity to explain his possession of certain items or to produce receipts showing that they were legitimate

purchases, the record discloses that the court did not base its determination on the ground it disbelieved the officer's testimony upon those factual issues. When the record of a 1538.5 proceeding affirmatively indicates that the trial court did not pass upon a factual issue, a finding thereon may not be implied. (*People* v. *Alexander,* 253 Cal.App.2d 691, 695 [61 Cal.Rptr. 814]; *Cohen* v. *Superior Court,* 5 Cal.App.3d 429, 435 [85 Cal.Rptr. 354].)

It is our conclusion that the order of suppression should be vacated and the matter should be remanded for further proceeding pursuant to section 1538.5 with directions to determine as to each item whether, on the basis of all of the *facts then known to the officers,* they acted reasonably in seizing it.

Let a peremptory writ of mandate issue directing respondent court to vacate its order of suppression entered in San Bernardino County Superior Court action No. CR. 23002, entitled "People v. Noah J. Thomas," and to conduct further proceedings in conformity with this opinion.

Kerrigan, J., and Kaufman, J., concurred.