[Crim. No. 17930. Second Dist., Div. Two. Dec. 31, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
ANDREW JAMES JACKSON et al., Defendants and Respondents.

[Civ. No. 35709. Second Dist., Div. Two. Dec. 31, 1970.]

ANDREW JAMES JACKSON, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA
COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 35693. Second Dist., Div. Two. Dec. 31, 1970.]

ROBERT EMORY ALLEN, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA
COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

(Consolidated Cases.)

## COUNSEL

David D. Minier, District Attorney, A. Barry Capello, Assistant District Attorney, Stanley M. Roden and Steve R. Balash, Deputy District Attorneys, for Plaintiff and Appellant in Crim. No. 17930 and for Real Party in Interest in Civ. Nos. 35709 and 35693.

No appearance for Respondent in Civ. Nos. 35709 and 35693.

Richard A. Tyler, Lawrence M. Nagin, Patrick L. McMahon, Jerry D. Whatley, Robert R. Stone and Charles E. Karpinski, under appointments by the Court of Appeal, for Defendants and Respondents in Crim. No. 17930 and for Petitioners in Civ. Nos. 35709 and 35693.

## OPINION

**COMPTON, J.**—In an information filed by the District Attorney of Santa Barbara County, 9 defendants were charged in varying combinations of 23 felony counts with burglary, receiving stolen property, possession of dangerous drugs, possession of marijuana, possession of a billy club and assault with a deadly weapon upon a police officer. Not all defendants were charged in each count.

Following a motion under section 995 of the Penal Code, the superior court ordered dismissal of certain counts and refused to dismiss others.

Two of the defendants did not participate in the 995 proceedings. Defendant Edwards had waived preliminary hearing and had no standing to attack the information. Defendant Kennedy failed to appear for arraignment and is a fugitive from justice.

The People appeal from the portion of the order dismissing certain counts. Defendants Allen and Jackson seek a writ of prohibition to prevent their trial on those counts which the court refused to dismiss.

The superior court's order dismissed all charges against defendants Rainey and Mason.

While some of the counts were dismissed as to defendants McMillan, Johnson and Harris, other charges against them remain. They have not sought prohibition as to those remaining counts.

Because the People's appeal and the two petitions for writs of prohibition involve the same basic issues, we ordered the matters consolidated.

On January 21, 1969, deputies of the Santa Barbara County sheriff's office entered an apartment at 775 Camino Del Sur in the Isla Vista area (to be referred to later as Location No. 1). There they seized certain items of stolen property and arrested defendant Jackson.

On February 3, 1969, deputies of the same department entered another apartment in the same area (Location No. 2) seized additional items of stolen property and arrested defendant McMillan. Defendants Mason and Rainey were observed in bed on the premises but were not arrested at the time. Rainey appeared to be the spokesman for the premises and accepted a receipt from the officer. All three defendants when specifically asked, denied knowledge of the ownership of the stolen items.

Later that morning, after concluding their activities at Location No. 2, the officers proceeded to yet another nearby apartment (Location No. 3). Prior to entry the officers observed defendant Rainey walk from Location No. 2 and enter Location No. 3. When the officers knocked and demanded entrance they observed through a window hurried activities and furtive movements on the part of the occupants. The officers then entered and seized still more items of stolen property plus some marijuana, dangerous drugs and a billy club.

During the course of this seizure defendant Allen allegedly assaulted one of the officers with a shotgun as the officer entered a bedroom. Johnson and Harris were first observed in a hallway near the bedroom and were attired in robes. Allen, Rainey, Harris and Johnson were all arrested at that time.

Defendant Mason was later arrested and charged.

The evidence which was adduced at the preliminary hearing and which provides the basis for the filing of the information consisted essentially of an account of the three referenced seizures.

With one significant exception, the connection of the defendants to the various crimes charged rested upon evidence of their occupancy of the three locations where the various items were recovered and their conduct at the time.

That exception was the testimony of the operator of a TV repair shop to the effect that defendant McMillan brought a stolen TV set in for repairs.

The charges of burglary and receiving stolen property based upon his possession of this TV set are obviously well founded and unaffected by any of the discussion here.

The various items of stolen property, the possession of which the People relied upon to support both the burglary and receiving stolen property counts, were established as having been taken in eight separate burglaries committed between November 1967 and December 1968, in the Santa Barbara area.

We find it unnecessary to describe all of the items recovered, the details of the various burglaries or the specific charges against each defendant.

It is sufficient to state that where the evidence showed a defendant to be an occupant of a location where stolen items were recovered, that defendant was charged with the burglary of the items and with receiving the items with knowledge of their stolen character.

Possession of the narcotics and the billy club was charged against those defendants present at the recovery thereof.

It is important to note that in each of the three locations the officers found loot from more than one burglary, and as to some of the burglaries, parts of the loot were found in more than one of the three locations.

The stolen property included guns, portable televisions, tape recorders, stereo equipment, photographic equipment and typewriters.

With the exception of the assault charge, which will be dealt with in detail later, the two basic questions to be answered as to each defendant are (1) was the People's evidence the product of a reasonable search and seizure, and (2) assuming the search and seizure to be proper, was the evidence sufficient to warrant a trial as to the various counts with which each defendant was charged?

We have concluded that the answer to each question as to each defendant must be answered in the affirmative.

Before addressing ourselves to these questions specifically, it is appropriate to state some general propositions of law which bear on the role of the superior court and this court in connection with a motion under section 995 of the Penal Code.

■■ On a motion to set aside an information, the superior court (as well as an appellate court reviewing a ruling on such motion) is to determine only whether the magistrate as a man of ordinary caution or prudence could conscientiously entertain a reasonable suspicion that a crime had been committed and that the defendant committed it. (*Perry* v. *Superior Court*,

57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529]; *Rogers* v. *Superior Court,* 46 Cal.2d 3, 7-8 [291 P.2d 929].) Neither the superior court nor the appellate court may substitute its judgment as to the weight of the evidence or any reasonable inferences to be drawn therefrom. (*People* v. *Azevedo,* 218 Cal.App.2d 483 [32 Cal.Rptr. 748]; *People* v. *Roth,* 261 Cal.App.2d 430 [68 Cal.Rptr. 49]; *Perry* v. *Superior Court, supra; People* v. *Heard,* 266 Cal.App.2d 747 [72 Cal.Rptr. 374].)

■ Furthermore, the superior court may not judge the credibility of witnesses that testified before the magistrate and an information may be set aside only where there is *no* evidence to connect defendant with the commission of the crime. (*People* v. *Swansboro,* 200 Cal.App.2d 831 [19 Cal. Rptr. 527]; *People* v. *Roth, supra,* at p. 444.)

■ While unexplained possession of stolen property, standing alone, will not support a *conviction* for the theft of the property or for the crime of receiving stolen property, such possession is a circumstance which could lead a reasonable person to entertain a strong suspicion that the possessor either stole it or received it with knowledge of its stolen character. (See *People* v. *Johnson,* 85 Cal.App.2d 240 [192 P.2d 483]; *People* v. *Monteverde,* 111 Cal.App.2d 156 [244 P.2d 447].)

Defendant Mason, in urging the insufficiency of the evidence to connect him to the crimes charged cites us to *Williams* v. *Superior Court,* 71 Cal.2d 1144 [80 Cal.Rptr. 747, 81 Cal.Rptr. 761, 458 P.2d 987]. There the court, in holding evidence of possession of stolen property to be sufficient to sustain, against a writ of prohibition, an information charging grand theft, emphasized the fact that defendant was found in possession of "practically all" the property that had been stolen from an automobile. Defendant Mason thus contends that, because not all the property stolen in the burglaries was recovered, the evidence is insufficient.

In this regard we believe that the possession of part of the loot from several burglaries is as incriminating as the possession of all the loot from one burglary.

The evidence of each defendant's occupancy of and presence at one of the three locations, together with the conduct of the various defendants, was sufficient to warrant the magistrate's conclusion that each defendant was in possession of all of the items found at such location.

This conclusion would in turn support a finding by the magistrate that there was probable cause to believe that each defendant had committed the crimes of burglary and receiving stolen property and that the defendants Allen, Johnson and Harris were also in possession of the marijuana, dangerous drugs and the illegal weapon (billy club).

We now turn to an examination of the circumstances of the three seizures which produced the bulk of the evidence against the defendants. Each of the searches and seizures rested on a different basis and will be dealt with separately.[1]

## LOCATION NO. 1

The search and seizure at this location was conducted pursuant to a search warrant issued on January 20, 1969, and executed on January 21, 1969.

The warrant directed a search for and seizure of property taken in a burglary in December 1968 of an apartment belonging to one Frank Ivey. Five items were listed in the warrant—an Akai tape recorder, Sony portable television, Garrard turntable, 8 recording reels and tapes and two speakers.

In the course of the search the officers seized the tape recorder, the portable TV, and the tapes. While looking for the remainder of the items listed in the warrant, the officers seized a rifle which subsequently proved to be one stolen in a burglary in August 1968, a Smith Corona typewriter, which had been taken in a burglary in November 1967, and a speaker taken in a burglary in December 1967. The rifle was found in a closet; the typewriter and speaker were sitting out in plain sight in the apartment.

The type of items which were described in the warrant were such that the officers were justified in looking into the closet. The speaker appeared to the officer to resemble an item described in the search warrant although it ultimately proved not to be.

The officers were familiar with the facts of several other burglaries which had occurred in the area and the rifle and the typewriter reasonably appeared to be items taken in those burglaries. They in fact were. The conduct of the officers in seizing items not named in the warrant was reasonable and proper.

■ The crucial question is whether the search warrant, under which authority the officers were acting, was validly issued.

The officer who prepared the affidavit in support of the search warrant and who obtained and, with the aid of other officers, executed the warrant was Detective Chayra of the Santa Barbara County sheriff's office.

Detective Chayra's affidavit set out information he had received from four individuals as follows:

[1]Each of these searches and seizures was prior to the effective date of *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. Hence the principles enunciated in that case are not applicable here.

(a) Mr. Ivey the victim of the burglary provided the facts of the burglary and a description of the items stolen;

(b) Eugene Hanson, the general manager of the apartments where the search took place, identified defendant Jackson as an occupant of the apartment. He further provided information to the effect that in the course of his duties as manager he had observed a Garrard turntable with matching speaker, a tape recorder, a tape deck and a portable TV in the suspect's apartment;

(c) Edward DeMao, a resident of an adjacent apartment and a friend of the victim advised that he had observed an Akai tape recorder in suspect's apartment and believed that it possibly was the one stolen from Ivey;

(d) Mr. Weik, assistant to Mr. Hanson, told Detective Chayra that he had entered the suspect's apartment and obtained the serial numbers from the suspected equipment.

The serial numbers obtained by Weik matched those of Mr. Ivey's stolen property.

Defendants now assail the actions of Mr. Weik as improper and urge that the warrant based upon his information was improperly issued.

Prior to Mr. Weik's entry of the apartment and obtaining of the serial numbers, Detective Chayra had talked to Mr. Hanson. After Hanson had related his own observations as set out above, Detective Chayra asked Hanson "if there was any way that [Hanson] could go in the apartment, under the contract, because he [Chayra] said he would need serial numbers in order to exactly identify the equipment."

Hanson advised Chayra that he could not do so. There was no further conversation on the subject.

Subsequently, Hanson instructed Weik to enter the apartment during an annual gas safety inspection check and to obtain the serial numbers. He did not tell Weik of his conversation with Chayra.

Hanson's assigned reason for taking the action he did was "to either clear the fellows that were in there, get the Sheriff's department off their back, or turn them over to the Sheriff's department." He denied that he was in any way acting as an agent of the police.

■ The Fourth Amendment to the Constitution and its progeny the exclusionary evidence rule address themselves to governmental action. (*Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 868]; *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

The conduct of a private citizen who acts in cooperation with or at the direction of government agents is viewed as governmental action in applying the exclusionary evidence rule. (*People* v. *Fierro,* 236 Cal.App.2d 344 [46 Cal.Rptr. 132].)

On the other hand if a private citizen engages in conduct on his own, which if engaged in by an agent of the government would constitute an unreasonable search and seizure, the exclusionary evidence rule does not prohibit the state from using as evidence, the fruits of such conduct. (See *People* v. *Tarantino,* 45 Cal.2d 590, 595 [290 P.2d 505]; *People* v. *Turner,* 249 Cal.App.2d 909, 926 [57 Cal.Rptr. 854].)

■ Under the circumstances of this case, the determination of whether Hanson and Weik were acting as agents for the state rested upon the testimony of Chayra, Hanson and Weik. Their combined testimony negated such an agency. There was no other evidence on the point.

■ Their credibility was for the magistrate's determination. (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].)

The magistrate resolved the issue against the defendants. The superior court and this court are bound by that determination. (*Perry* v. *Superior Court, supra,* at p. 283.)

The search and seizure at Location No. 1 was reasonable and the evidence admissible.

## LOCATION NO. 2

Detective Chayra in company with other officers entered this location on February 3, 1969, armed with a warrant for the arrest of defendant McMillan on the charge of burglary.

As described earlier, the operator of a TV repair shop reported to the sheriff's office that on January 27, 1969, McMillan had delivered to him a TV set. The serial number had been removed. However, the set was identified as having been stolen in a burglary in November 1968.

Having concluded that these same facts were sufficient to hold the defendant for trial on either burglary or receiving stolen property it follows that they were adequate for the issuance of an arrest warrant.

■ While thus properly on the premises for the purpose of serving a valid warrant and while effecting the arrest of McMillan, the officers observed, in plain sight, a typewriter and Garrard turntable which they recognized as similar to items stolen in the Ivey burglary mentioned above

and another burglary committed in December 1967. The items were in fact the product of those two burglaries.

The officers' seizure of these items was reasonable. The evidence was properly admitted. (*Skelton* v. *Superior Court,* 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485]; *People* v. *Superior Court,* 9 Cal.App.3d 203 [88 Cal. Rptr. 21].)

## LOCATION NO. 3

Shortly after the arrest of McMillan and the seizure of the items at Location No. 2, Detective Chayra and other officers entered Location No. 3.

At this point the officers were armed with a writ of possession issued by the Santa Barbara Municipal Court on January 31, 1969, under the provisions of section 1166a of the Code of Civil Procedure.

The complaint for unlawful detainer and the application for the writ had been filed by private counsel representing the owners of the property. The complaint and the writ named defendants Johnson, Kennedy, Mason and several Does as occupants of the premises.

There is no evidence that the sheriff's officers had any knowledge of the writ until it was delivered to them for service.

The proceedings which resulted in the issuance of the writ were in compliance with the relevant statutes and the writ was valid on its face. It directed the sheriff to "deliver to . . . plaintiff . . . without delay . . . possession of . . . apartment A . . . 6765 Del Playa."

After adequately announcing their presence, making a demand for admittance, stating the reason for such demand and after waiting a reasonable period of time during which the defendants refused to open the door, the sheriff's deputies forced entry.

Both before and after entry the officers clearly identified themselves as sheriff's deputies.

Several of the defendants were on the premises in various states of dress.

As Detective Chayra entered a bedroom he was confronted by defendant Allen leveling a shotgun at the officer's midsection. After repeated requests to drop the gun, defendant Allen finally laid the gun on the bed. It was found to be loaded.

Subsequently the officers seized the various items of stolen property—the marijuana, dangerous drugs and the billy club, and arrested the

occupants of the apartment. All of these items were within plain sight or in locations which the officers had a right to examine under the circumstances.

Defendants contend that Code of Civil Procedure section 1166a in providing for the issuance of a writ of possession ex parte without notice and hearing is unconstitutional.

Defendants rely on *In re Harris,* 69 Cal.2d 486 [72 Cal.Rptr. 340, 446 P.2d 148], in which our Supreme Court held civil arrest statutes unconstitutional because of lack of hearing and due process.

The contention is that the writ of possession being the product of an unconstitutional statute could not give the officers lawful access to the premises and thus all of the officers' observations and recovery of evidence was "the fruit of the poisonous tree."

In determining whether the officers' conduct was an "unreasonable" contravention of the Fourth Amendment of the Constitution of the United States or article 1, section 19 of the California Constitution, we need not decide the constitutionality of section 1166a of the Code of Civil Procedure. This is because of the very fact that the officers were not required to make that determination for themselves when commanded by the court to take possession of the premises.

The application of the exclusionary evidence rule requires an examination of the reasonableness of the *officers'* conduct.

Here the sheriff's deputies did not *procure* the issuance of the writ. The writ, valid on its face, was a command of a duly constituted court which the deputies were required to obey.

It is not difficult to imagine the chaos in our judicial system that would result if the sheriff or the police were required to make or did make an independent decision on the constitutionality of the statutes underlying court process before undertaking the execution thereof.

By way of analogy to other types of searches we consider the following to be relevant.

■ Officers may rely on a consent to search when that consent is given by one who the officers could reasonably assume had authority to consent. (*People* v. *Hill,* 69 Cal.2d 550, 554-555 [72 Cal.Rptr. 641, 446 P.2d 521]; *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469].)

Policemen are not required to be experts in the law of landlord and tenant.

■ In searches based on information from informants our courts

have consistently held that it is the reasonableness of the officer's reliance on the information that is important rather than the ultimate validity of the information. (See *People* v. *Weathers,* 162 Cal.App.2d 545, 546-547 [328 P.2d 222]; *People* v. *Boyd,* 162 Cal.App.2d 332, 334 [327 P.2d 913]; *People* v. *Dean,* 151 Cal.App.2d 165, 167 [311 P.2d 85].)

 Certainly an officer is as justified in relying upon the apparent authority of a court to issue a writ of possession as he is in relying upon information from a reliable informant or upon the apparent authority of a citizen to consent. The officers being lawfully on the premises and observing contraband and stolen property were entitled to seize it. (*Skelton* v. *Superior Court,* 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485]; *People* v. *Superior Court,* 9 Cal.App.3d 203 [88 Cal.Rptr. 21].)

The seizures at Location No. 3 were reasonable.

## THE ASSAULT

 Defendant Allen is charged alone in count XXII with assault with a deadly weapon on a peace officer, to wit, Detective Chayra.

Defendant aimed a loaded shotgun at Chayra. Chayra was a peace officer and, as we have concluded, was in the act of lawfully performing his duty.

Chayra and others testified that they well identified themselves as peace officers.

Reasonable inferences to be drawn from this evidence clearly support the magistrate's finding that all of the necessary elements of the offense were present.

Defendant seeks to rely on *People* v. *Curtis,* 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], which holds that the increased punishment for assaulting a peace officer is not applicable to a case where the officer was not engaged in the lawful performance of his duty.

*Curtis* has no application here. Detective Chayra was lawfully performing a duty which the court and the law had placed upon him. Even a conclusion on our part that the *court* had exceeded its power in issuing the writ would not give the defendant the right to assault the officer.

Contrary to a notion which seems to enjoy a certain currency in some segments of our society, neither the constitutionality of our laws nor the propriety of police conduct can be settled at the point of a shotgun. (Pen. Code, § 834a.)

The order of the superior court dismissing counts IV, V, IX and X as to defendant Andrew James Jackson is reversed.

The order of the superior court dismissing counts I, III, IX and XI as to defendant Maurice Anthony Rainey is reversed.

The order of the superior court dismissing counts I, III, IX and XI as to defendant Earl Thomas McMillan is reversed.

The order of the superior court dismissing counts I, III, IX and XI as to defendant Robert Frank Mason is reversed.

The order of the superior court dismissing counts IV, VI, XIV, XV, XVI, XVII, XVIII and XIX as to defendant James Earl Johnson is reversed.

The order of the superior court dismissing counts IV, VI, XIV, XV, XVI, XVII, XVIII and XIX as to defendant Michael Harris is reversed.

The order of the superior court dismissing counts IV, VI, XIV, XV, XVI, XVII, XVIII and XIX as to defendant Robert Emory Allen is reversed.

The petition for a writ of prohibition by defendant Robert Emory Allen is denied.

The petition for a writ of prohibition by defendant Andrew James Jackson is denied.

Roth, P. J., and Herndon, J., concurred.

Petitions for a rehearing were denied January 28, 1971, and the petitions of respondents Rainey, Allen, Johnson and Harris for a hearing by the Supreme Court were denied February 24, 1971.