[Civ. No. 34578. Second Dist., Div. One. June 12, 1969.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ALONZO BURTON, Real Party in Interest.

Evelle J. Younger, District Attorney, Harry Wood and Maurice H. Oppenheim, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Leon Thompson, under appointment by the Court of Appeal, for Real Party in Interest.

FEINERMAN, J. pro tem.*—Petitioner seeks a writ of mandate directed to respondent court requiring it to annul its action of April 7, 1969, suppressing evidence in a criminal prosecution against real party in interest (hereinafter referred to as the defendant). The motion is made pursuant to Penal Code section 1538.5, subdivision (o).

In the proceeding pending in the respondent court, the defendant is charged with a violation of Penal Code section 459, burglary and a violation of Penal Code section 496, receiving stolen property. Defendant's motion to suppress under Penal Code section 1538.5 was submitted to the trial court solely on the transcript of the preliminary hearing. The defendant did not testify at the preliminary hearing, and no additional evidence was presented by either of the parties at the 1538.5 hearing.

We have reviewed the record and have concluded that the respondent court's action in granting defendant's motion to suppress evidence was in error and that a peremptory writ of mandate should issue.

### STATEMENT OF FACTS

On November 5, 1968, at 1:50 a.m., uniformed Officers Brackley and Vinson were on patrol in an unmarked police car and were traveling southbound on Lucerne Boulevard, approaching the intersection of Edgewood Place in the City of Los Angeles. The officers observed a 1956 brown Ford driv-

*Assigned by the Chairman of the Judicial Council.

ing eastbound on Edgewood and both cars arrived at the intersection at approximately the same time. The driver of the Ford looked in the officers' direction, made a quick right turn, and accelerated the speed of the vehicle to about 60 miles per hour. The posted speed limit for the area was 35 miles per hour. In a three-mile span the Ford automobile committed in excess of 20 traffic violations and narrowly missed being involved in two major traffic accidents.

At the intersection of Serrano Avenue and San Marino Street, the Ford failed to complete a left-hand turn, drove up onto the sidewalk, and crashed into a cement abutment.

The Ford was totally demolished and the driver, later identified as codefendant Smith, was pinned behind the steering wheel. He was the only person in the vehicle. The officers removed the driver from the automobile and called for an ambulance.

Officer Brackley looked inside the Ford and he observed six new chrome wheels, two brand-new tires, a hand drill, a .16 gauge Winchester shotgun, two floor mats bearing a Rayco design, a Polaroid camera, and approximately 99 brand-new stereo tapes with the price tags still attached to the tapes. The officer also observed a number of similar stereo tapes on the street in the immediate vicinity of the crash site.

The registration for the vehicle was in the name of Glenda Ferrel with an indicated address of 1511 Leighton Avenue. However, the ID tag for the Ford had been removed. An inspection of the car's ignition revealed that it was hotwired. Officer Brackley searched the driver of the car and found no identification on his person. The officer then checked the Ford's glove compartment and found various bills made out to a J. Smith, bearing an address of 4526¾ Edgewood Place. After checking out the shotgun with headquarters, and receiving information that it was stolen, the driver of the Ford was arrested for burglary. The car was impounded and the driver was sent to a hospital.

The police officers then proceeded to 4526¾ Edgewood Place to make a follow-up investigation. Their stated purpose was to determine whether the driver of the Ford was J. Smith, whether or not he lived at the designated Edgewood Place address, and whether or not the vehicle was stolen. When they arrived at the Edgewood Place location, the officers noticed a large cardboard box containing two rolls of blue cloth, apparently new, lying on the grass near the apart-

ment building. Behind the apartment building, the officers also observed an empty cardboard box similar to the one they had seen on the front lawn.

The manager of the apartment building pointed out to the officers the particular apartment in which Smith lived. The officers then knocked on the door of that apartment and identified themselves as police officers. There was no sound inside and Officer Brackley waited about 15 seconds and knocked a bit louder. After hearing some noises coming from inside the apartment, some of the police officers went to the rear of the apartment. A short time thereafter defendant Burton came running out the back door. When he saw the police, he stopped and stood still. Replying to a question from Officer Brackley, defendant Burton identified himself as Alonzo Burton, stated that he lived at 4526¾ Edgewood Place, and confirmed the fact that a Jimmy Smith also lived at that location.

Defendant Burton had left the door wide open as he left the apartment. In response to a call from Officer Rosalino, who was standing at the back door, Officer Brackley went to the rear entrance and shone his flashlight into the apartment. The beam of light went through the kitchen into the dining room and the officer observed about 25 stereo cartridges lying on the floor and in a cabinet in the dining room. The officer testified that these cartridges were "very similar" and appeared 'identical" to the ones he had previously observed at the scene of the accident. However, at the time he first observed the tapes, Officer Brackley admitted he could not tell whether they were old or new and he admitted on cross-examination that these tapes were similar to tapes he had also seen at other places, including "shops, stores, and vehicles."

Defendant Burton was arrested and the officers entered the apartment. Thirty bolts of cloth and a color television set were recovered by the officers from the apartment. These items were the subject matter of the 1538.5 motion to suppress granted by respondent court.

### Were the Arrest of Defendant Burton and the Subsequent Search of the Apartment Proper?

In order to justify an arrest, it is not necessary for a police officer to have evidence qualitatively and quantitatively sufficient to support a conviction. (*People* v. *Rios*, 46 Cal.2d 297 [294 P.2d 39] ; *People* v. *Coblentz*, 229 Cal.App.2d 296, 301 [40 Cal.Rptr. 116].) Penal Code section 836 authorizes an officer to make an arrest without a warrant whenever he has reasonable cause to believe that the person to be arrested has

committed a public offense in his presence, or whenever he has reasonable cause to believe that the person to be arrested has committed a felony. Reasonable or probable cause has been defined as "a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

 The reasonableness of the police officers' conduct when they arrived at the 4526¾ Edgewood Place location must be determined in the light of the total circumstances existent at that time. As the court noted in *People* v. *Gamboa*, 235 Cal.App.2d 444, 448 [45 Cal.Rptr. 393] : "The totality of information, coming from a number of independent sources, may be sufficient even though no single item meets the test. If the smoke is heavy enough, the deduction of fire becomes reasonable."

In adopting a Gestaltist approach in this area, courts are not being innovative; they are merely accepting the fact that straight line measurements (i.e., weighing each individual factor separately) may not always provide the proper answers. Both the psychologist who studies human behavior, and the policeman who deals with problems on his beat, have learned that the ultimate configuration or structure that evolves from total experience is not necessarily the simple total of its constituent parts.

 In this case it was reasonable and necessary for the police officers to determine the identity and address of the driver involved in the crash of the Ford. Upon their arrival at 4526¾ Edgewood Place, the officers saw a box containing two rolls of apparently new blue cloth lying on the grass in the middle of the night. Considered by itself, it was only a suspicious circumstance, but it was a factor to be evaluated by the officers. (Cf. *People* v. *Blackwell*, 257 Cal.App.2d 251, 254 [64 Cal.Rptr. 761].)

When the officers knocked on the door of the apartment and identified themselves, the defendant Burton bolted out the back door. The flight of the defendant may not in and of itself constitute probable cause for his arrest, but flight can constitute evidence of consciousness of guilt which can be coupled with other relevant facts in the ultimate determination of probable cause. (*People* v. *Leos*, 265 Cal.App.2d 822, 825 [71 Cal.Rptr. 614].)

 The defendant Burton left the door of the apartment

open when he made his hasty exit and Officer Brackley was able to see a number of stereo tapes in the apartment which he believed resembled the tapes he had previously seen in the Ford. While it is true that the officer could not say with certainty that these were similar tapes, there must only be a reasonable belief that the tapes were similar and that the items were stolen. (Cf. *People* v. *Baker,* 267 Cal.App.2d 916, 919 [73 Cal.Rptr. 455]; *In re Collins,* 271 Cal.App.2d 195 [76 Cal.Rptr. 622].)

In conclusion, while each factor previously considered may not have been sufficient by itself for probable cause to arrest the defendant, the totality of circumstances justifies his arrest. The search of the apartment was incidental to the arrest of the defendant just outside the apartment and was contemporaneous with the arrest; only the premises immediately involved were searched; and only contraband connected with the alleged crime was seized.

Let a peremptory writ of mandate issue requiring the. Superior Court of Los Angeles County to annul its action of April 7, 1969, suppressing evidence in People v. Burton, case number A 238415, and to make a new and different order denying the motion to suppress evidence.

Fourt, Acting P. J., and Lillie, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 1, 1969.