[No. B001665. Second Dist., Div. Five. May 10, 1984.]

KENNETH CREWS MANN et al., Plaintiffs and Appellants, v.
DONALD MACK et al., Defendants and Respondents.

**COUNSEL**

Kenneth Crews Mann, in pro. per., and for Plaintiffs and Appellants.

Ira Reiner, City Attorney, John T. Neville, Senior Assistant City Attorney, and Richard M. Helgeson, Assistant City Attorney, for Defendants and Respondents.

**OPINION**

FEINERMAN, P. J.—This case arose out of a lengthy neighborhood dispute. Plaintiffs, the Mann family, were nurturing an incipient rock and roll

band in their garage, much to their neighbor's distress. The band, a group of three to four male teenagers, including the Manns' sixteen-year-old son, Darien, practiced at unscheduled times and often late into the night. The none-too-dulcet tones of their creative product, increased by an amplification system, made it difficult for neighbors to talk to one another without shouting. Evening television viewing in nearby houses often became impossible. The neighbors complained, to no avail. Acrimony developed and increased, particularly between the Manns and their next-door neighbors, the Macks. The Macks complained about the noise to the police on numerous occasions. As a result, the Manns' house became a regular stop on the local constabulary's beat.

Plaintiffs viewed the routine investigations by the police of Mack's routine complaints as harassment, intimidation and, ultimately, as an alleged deprivation of their constitutional rights. One incident in particular raised the Manns' ire.

On May 14, 1977, the band began practicing around 6 or 7 p.m. Mr. Mack described the noise as, ". . . coming from the Manns' garage, there were large amplifiers and musical instruments in there. And the noise was so loud that we couldn't hear the television. We couldn't talk in our house. Just very loud noise. Very disturbing." Mr. Mack first went over to the Mann house and rang the doorbell. When no one answered, he returned to his own house and called the police. Los Angeles Police Officer Richard K. Hoefel and his partner responded to Mr. Mack's complaint at approximately 8 p.m. As they approached the Mann house, they could hear the band playing loudly from approximately a half block away. Inside Mr. Mack's house, Officer Hoefel found that, even with the windows closed, he could hear the band and was forced to converse with Mr. Mack in a loud voice.

Officer Hoefel visited two other neighbors of the Manns and found that they also had complaints about the noise. Officer Hoefel telephoned his watch commander and reported the situation. He told him that the noise level was "very loud," and that Mr. Mack stated "that it was an ongoing problem; that it had been continuous for a length of time, that there had been other police cars called to the location on prior occasions" and that Mr. Mack's neighbor made similar complaints. The watch commander read the provisions of Los Angeles Municipal Ordinance section 116.01[1] over

---

[1]Los Angeles Municipal Code section 116.01 provides as follows: "Notwithstanding any other provisions of this chapter and in addition thereto, it shall be unlawful for any person to willfully make or continue, or cause to be made or continued, any loud, unnecessary, and unusual noise which disturbs the peace or quiet of any neighborhood or which causes discomfort or annoyance to any reasonable person of normal sensitiveness residing in the area. [¶] The standard which may be considered in determining whether a violation of the

the phone to Officer Hoefel. Officer Hoefel determined that the noise emanating from the Mann's garage was unreasonably loud, in violation of Los Angeles Municipal Code section 116.01, and constituted a disturbance of the peace, in violation of Penal Code sections 148 and 415.

Officer Hoefel went to the Manns' house and knocked on the front door. When no one answered, Officer Hoefel and his partner walked to the gate of the chain link fence which was located in front of the Mann garage. They waited until there was a break in the music and then knocked on the chain link fence with a metal flashlight. Darien Mann came to the gate. Officer Hoefel asked him his name and Darien refused to give it, although he eventually revealed his identity. However, he admitted that he was playing the music inside the garage. Officer Hoefel told him his band was disturbing the peace and asked him to get the other band members and come outside to the front of the house to talk to the officers. Darien complied. The four boys walked into the Mann house and three of them came out onto the front porch. Darien was not with them. The front door of the house was open. Officer Hoefel walked into the house and down a hallway to a bedroom. The door to the bedroom was open and he saw Darien inside the room. The young man appeared to be making a phone call. Officer Hoefel told him "he was under arrest and to come outside." Darien complied.

The police officers talked with the boys on the front porch and told them that they were in violation of the Los Angeles sound ordinance (L.A.M.C., § 116.01). The officers also discussed "other means and other suggestions of how they could stop from getting these radio calls in the future, such as renting a hall or insulating the garage, discussing with Mr. Mack a time to play, which would be suitable to both of them, so they wouldn't be disturbing the peace." The boys' responses were cooperative and "positive," and the officers released the boys after filling out field interview cards listing their names and addresses.

This May 14 incident was not the end of the dispute between the Manns and the Macks. The noise complaints continued and resulted, ultimately, in an informal hearing held in June 1978, before the city attorney. No criminal proceedings were initiated after the hearing.

---

provisions of this section exists may include, but not be limited to, the following: [¶] (a) The level of the noise; [¶] (b) Whether the nature of the noise is usual or unusual; [¶] (c) Whether the origin of the noise is natural or unnatural; [¶] (d) The level and intensity of the background noise, if any; [¶] (e) The proximity of the noise to residential sleeping facilities; [¶] (f) The nature and zoning of the area within which the noise emanates; [¶] (g) The density of the inhabitation of the area within which the noise emanates; [¶] (h) The time of the day and night the noise occurs; [¶] (i) The duration of the noise; [¶] (j) Whether the noise is recurrent, intermittent, or constant; and [¶] (k) Whether the noise is produced by a commercial or noncommercial activity."

Mr. Mack had requested a prior city attorney hearing regarding plaintiffs in November 1977. Mr. Mack had complained that plaintiff Kenneth Crews Mann had broken off a piece of his newly laid asphalt driveway. Mr. Mann complained that Mr. Mack had placed asphalt on his property and that he had a right to remove the asphalt. The city attorney's hearing concluded only that the matter involved a civil boundary dispute as opposed to a criminal matter.

The two-year antagonism between the Manns and the Macks culminated in the filing of this lawsuit by the Manns. In their Fourth Amendment complaint, the Manns named their neighbors, the Macks and the Levins, and the City of Los Angeles and Officer Hoefel as defendants. However, the matter proceeded to trial only against the city and Officer Hoefel. Hence, we discuss only those causes of action alleged against those parties.

Plaintiffs claimed that the May 14 incident, when Officer Hoefel and his partner came to their house to investigate Mr. Mack's complaint of excessive noise, constituted an invasion of privacy and a deprivation of plaintiff's constitutional rights. Plaintiffs also alleged that on May 25, 1978, the city "misused the criminal process of the office of the City Attorney, City of Los Angeles, and the entire range of procedures incident thereto, by threatening the plaintiff Kenneth Crews Mann with prosecution of a crime to gain an advantage in this civil suit." Apparently, this allegation refers to the city attorney's hearing held for the purpose of settling the complaints by Mr. Mack about plaintiffs' refusal to abate the noise problem caused by the band rehearsals in their garage.

Plaintiffs also allege that the frequent visits by the police to their home were part of a conspiracy by the city and the individual defendants to deprive plaintiffs of their constitutional rights. Plaintiffs sought damages and imprecated the court to enjoin what they termed an "illegal expenditure of public funds"—to wit, those funds expended in investigating disturbances at plaintiffs' home. Plaintiffs also sought a declaration that the Los Angeles Noise Regulation Ordinance was unconstitutional and void for vagueness.

A nonjury trial was had and the trial court rendered its judgment in favor of defendants and against plaintiffs. In its statement of decision, the trial court found that the police had a duty to investigate the numerous complaints made by the Macks and the Manns against each other and that the city had immunity with respect to such investigations under Government Code sections 815.2, subdivision (b), 818.2, 820.4, 820.8, 845 and 846. In addition, the court found that the police action in investigating such complaints did not amount to a violation of plaintiffs' constitutional rights.

As to the May 14 incident, the trial court found that Officer Hoefel "acted properly," that he "had probable cause to detain or arrest Darien Mann for a number of violations including *Penal Code* sections 148 and 415, and *Los Angeles Municipal Code* section 116.01." The trial court found that "The officer reasonably believed that Plaintiff Darien Mann was attempting to evade his investigation, and as such was authorized to enter into the house to detain and/or arrest the plaintiff." The court held that no liability under state or federal law had been established with respect to the May 14 incident.

The trial court held that no liability could attach to the city based on the scheduling or holding of the two city attorney hearings (Gov. Code, § 821.6) and concluded that the hearings "did not violate any constitutional right of the plaintiffs." The trial court noted that many of the allegations of the plaintiffs' verified complaint were not proven and stated, "This Court weighed the credibility of the witnesses before reaching a decision. In weighing the credibility of the witnesses, this Court decides that Plaintiffs did not bear their burden of proof, and as such did not prove a cause of action against either the City of Los Angeles or Richard K. Koefel. Furthermore, the plaintiffs did not prove any damages which may be attributable to the acts of the Defendants City of Los Angeles and Richard K. Koefel [*sic*]."

DISCUSSION

I

██▌██ ██ ▌█ In this appeal, plaintiffs raise only one question of substance, that is, whether the trial court erred in concluding that the May 14 incident did not involve a violation of plaintiffs' constitutional or civil rights, actionable under 42 United States Code Annotated section 1983 or as a cause of action for invasion of privacy.[2]

 At the outset, it is clear that plaintiffs did not put on evidence sufficient to sustain their allegations that the police action in generally investigating Mr. Mack's and other's complaints of noise disturbances at the Mann house violated plaintiffs' right to privacy under California Constitution, article I, section 1. (Cf. *White* v. *Davis* (1975) 13 Cal.3d 757, 773-776 [120 Cal.Rptr. 94, 533 P.2d 222].) The routine investigation of a neigh-

---

[2]Appellants' opening brief does not conform to the requirements of California Rules of Court, rule 13, as it contains neither a statement of the case nor a statement of the material facts. Under these circumstances, we need not consider any claim by appellants that the evidence is insufficient to support the trial court's findings. (*Kanner* v. *Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 564 [78 Cal.Rptr. 25].)

borhood disturbance does not constitute an invasion of the privacy of the perpetrator of the disturbance.

■ Plaintiffs contend, however, that the entry by Officer Hoefel into their house on May 14 was unlawful and violative of their constitutional rights to privacy and to be free of illegal searches and seizures. We have concluded that the trial court correctly determined that Officer Hoefel was justified in entering the Mann house to effect Darien Mann's arrest.

After Darien Mann admitted to Officer Hoefel that he was playing the loud music inside the Mann garage, Officer Hoefel had probable cause to arrest him for a violation of Municipal Code section 116.01 and Penal Code section 415 (disturbing the peace). ■ A police officer may make an arrest without a warrant "[w]henever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." (Pen. Code, § 836, subd. 1.) ■ A misdemeanor is committed in an officer's presence when it is apparent to his senses; there need not be physical proximity. (*In re Richard C.* (1979) 89 Cal.App.3d 477, 488 [152 Cal.Rptr. 787]; *Pate* v. *Municipal Court* (1970) 11 Cal.App.3d 721, 725 [89 Cal.Rptr. 893].)

■ Plaintiffs' contention that Officer Hoefel had to use a decible meter in order to determine whether Darien was violating the Los Angeles Sound Ordinance is without merit. Los Angeles Municipal Code, section 116.01 provides "*Notwithstanding any other provision of this chapter and in addition thereto,* it shall be unlawful for any person to wilfully make . . . any loud, unnecessary and unusual noise which disturbs the peace or quiet of any neighborhood . . . ." (Italics added.) A determination as to what constitutes a "loud, unnecessary and unusual noise" requires common sense, not a decibel meter. In any event, under Penal Code section 836, subdivision 1, Officer Hoefel needed only reasonable cause to believe that a violation of the sound ordinance had taken place before he was authorized to arrest Darien. ■ Reasonable cause does not require certainty beyond doubt, but only that a person of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty of a crime. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Superior Court (Price)* (1982) 137 Cal.App.3d 90, 97 [186 Cal.Rptr. 734]; *People* v. *Superior Court (Burton)* (1969) 274 Cal.App.2d 7, 11 [78 Cal.Rptr. 757].)

■ Having probable cause to arrest, Officer Hoefel ordered Darien and the other band members to come to the front of the house. The trial court ruled that, when Darien failed to come out of the house, Officer Hoefel acted reasonably in concluding that Darien was attempting to evade him.

Entry into a residence by an officer to forestall the imminent escape of a suspect constitutes an exception to the warrant requirements of *People* v. *Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333]. Under circumstances such as existed here, we find it was not violative of Darien's constitutional rights for Officer Hoefel to enter the open door of the Mann residence to effect Darien's arrest.

Plaintiffs' contentions with respect to Penal Code section 844 are also without merit. There is no violation of section 844 where the surrounding circumstances make the officers' purpose clear to the occupant. (See *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 319 [82 Cal.Rptr. 348, 461 P.2d 628]; *People* v. *Rosales* (1968) 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489].) Here, the door was open and Darien and the other band members knew that police officers were present and that the officers were investigating a violation of the noise ordinance.[3]

## II

Plaintiffs have numerous complaints concerning the manner in which the trial judge conducted the trial in this case. Suffice it to say, the trial judge was a model of patience and restraint in the midst of a highly volatile situation.

## III

Plaintiffs' contention that the trial court allowed defendants' counsel to examine Officer Hoefel by use of leading questions in violation of Evidence Code section 776, subdivision (b)(1) has no validity. While the trial court at first indicated it would allow such examination, the court almost immediately reversed itself and sustained plaintiffs' objection pursuant to Evidence Code section 767.

## IV

Plaintiffs assert that the trial court erroneously admitted defendants' exhibit B into evidence without a proper foundation. The record does not bear out plaintiffs' contention. Officer Hoefel identified the document, tes-

---

[3]Even if we assumed, arguendo, that Darien's constitutional rights were violated, in light of the trial court's finding that Officer Hoefel had a reasonable belief that his actions were lawful and within the scope of his authority, plaintiffs would not be entitled to collect any damages under 42 United States Code section 1983. (See *Harlow* v. *Fitzgerald* (1982) 457 U.S. 800, 818 [73 L.Ed.2d 396, 410-411, 102 S.Ct. 2727]; *Novick* v. *City of Los Angeles* (1983) 148 Cal.App.3d 325, 334 [195 Cal.Rptr. 747]; *Rheaume* v. *Texas Dept. of Public Safety* (5th Cir. 1982) 666 F.2d 925, 930.)

tifying, "This is a communication card completed on May 4th, sending us on a radio call to 14626 Greenleaf regarding a disturbing the peace." Moreover, even if the plaintiffs were correct in their contention, the improper admission of this document would not amount to reversible error or a miscarriage of justice. (Cal. Const., art. VI, § 13.)

## V

Finally, plaintiffs contend that the Los Angeles Municipal Code section 116.01 is unconstitutional and void for vagueness. We conclude to the contrary based on *Smith* v. *Peterson* (1955) 131 Cal.App.2d 241 [280 P.2d 522]. In *Smith,* the court scrutinized a statute making it unlawful for any person to sell, lease, install or replace a muffler which did not "prevent any excessive or unusual noise." In holding that the statute was constitutional, the court stated (131 Cal.App.2d at p. 246): "In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." The court concluded (131 Cal.App.2d, at p. 250): "We conclude that the words 'excessive' or 'unusual,' when viewed in the context in which they are used are sufficiently certain to inform persons of ordinary intelligence of the nature of the offense which is prohibited, and are therefore sufficient to establish a standard of conduct which is ascertainable by persons familiar with the operation of automobiles." (See also, *Kovacs* v. *Cooper* (1949) 336 U.S. 77 [93 L.Ed. 513, 69 S.Ct. 448, 10 A.L.R.2d 608], which upheld an ordinance declaring it to be unlawful for any person to operate any device on the public street which emitted "loud and raucous" noises; *Haggerty* v. *Associated Farmers of Calif.* (1955) 44 Cal.2d 60, 70 [279 P.2d 734], upholding an antinoise ordinance forbidding "any loud and raucous" noise upon a public highway.)

We hold that the terms of Los Angeles Municipal Code section 116.01 are sufficiently certain to inform persons of ordinary intelligence of the nature of the conduct which is prohibited.[4]

---

[4]Even if we concluded to the contrary, a postarrest judicial declaration of unconstitutionality of the statute under which an arresting officer acted would not automatically vitiate good faith or probable cause on the part of the arresting officer. (*Pierson* v. *Ray* (1967) 386 U.S. 547, 557 [18 L.Ed.2d 288, 296, 87 S.Ct. 1213]; *People* v. *Gibbs* (1971) 16 Cal.App.3d 758, 762 [94 Cal.Rptr. 458].)

The judgment is affirmed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied June 4, 1984, and appellants' petition for a hearing by the Supreme Court was denied July 20, 1984. Bird, C. J., was of the opinion that the petition should be granted.