Filed 11/1/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSEPH CHASE et al., | B307017 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC647861) |
| v. | |
| BENJAMIN WIZMANN et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Susan Bryant-Deason, Judge.  Affirmed.

Law Office of Lee David Lubin, Lee D. Lubin; and Paul Kujowsky for Defendants and Appellants.

Fischbach & Fischbach, Joseph S. Fischbach; and Sylvia E. Chase for Plaintiffs and Respondents.

_____

In this acrimonious noise dispute between neighbors, defendants appeal the trial court's grant of a preliminary injunction requiring them to relocate certain air conditioning and pool equipment to the opposite side of their property. The trial court concluded that plaintiffs were likely to prevail on a private nuisance claim at trial and that the balance of harms favored moving the noisy equipment. On appeal, defendants contend that only equipment noise that violates section 112.02, subdivision (a) of the Los Angeles Municipal Code (LAMC or Municipal Code) can be the basis for a nuisance action, there is no substantial evidence supporting the trial court's conclusion that the interference was substantial or caused unreasonable damage, and the trial court abused its discretion in finding that plaintiffs were likely to prevail and the balance of harms favored plaintiffs. Finding no error, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**I.      The Parties and Properties**

Plaintiff and respondent Joseph Chase and defendant and appellant Benjamin Wizmann have owned adjacent residential properties in the Hollywood Hills neighborhood of Mount Olympus in Los Angeles for approximately 25 years.[1] Beginning in 2013, Wizmann undertook a significant renovation of his property. Among other things, in 2015 Wizmann installed new pool and air conditioning equipment between the exterior wall of his house and a retaining wall close to the property line of the two lots, directly underneath Chase's bedroom window. The hard surfaces of the retaining wall and Wizmann's house reflect and amplify the noise of the equipment when it is operating.

---

[1] For ease of discussion we refer to Chase and Wizmann singularly, in accordance with both parties' briefs.

2

Chase is a senior citizen with cardiovascular disease, emphysema, diabetes, and other health conditions which require as much rest as possible during the day and a full night's sleep. Chase's property has been his primary residence since 1987. Since 2015, Wizmann has operated his property as a short-term rental. Wizmann's tenants tend to keep all of the pool and air conditioning equipment operational at the same time. When the Wizmanns lived at the property they would turn off the equipment when it became too noisy, but the neighbors' relationship deteriorated and Wizmann became unresponsive to Chase's noise concerns after moving out. Chase complained to Wizmann about the noise several times, and on several occasions Chase called the police, who would determine that the noise was excessive and instruct the tenants to turn off the equipment.

In 2016, after complaints from Chase of noise and unpermitted construction activity, the City of Los Angeles ordered Wizmann to move the equipment so that it would be at least five feet from the retaining wall.

In June 2018, the City of Los Angeles cited Wizmann's property as a public nuisance due to repeated large, unruly parties by renters, illegal parking, burglary at the property, refuse in the street, and neighbor complaints of public urination, public intoxication, fistfights outside the property, and other illegal activity. The city found Wizmann in violation of multiple sections of the Municipal Code, including LAMC sections 41.57 (Loud and Raucous Noise Prohibited), 116.01 (Loud, Unnecessary, and Unusual Noise), and 112.01, subdivision (b) (amplified music in residential zone audible beyond 150 feet).

## II.     The Temporary Restraining Order

Chase and his wife, Sylvia Chase, filed the underlying multi-claim complaint in this action against Wizmann and his wife, Michelle Wizmann, on January 23, 2017, including a cause of action for nuisance.[2]

In 2020, Wizmann rented the property to tenants for a six-month period, and when summer arrived the tenants began using the pool equipment and air conditioning around the clock.  On June 6, 2020, the noise reached a level Chase found "exceptionally unbearable for a prolonged period of time and it felt like sitting under a jet engine."  Sylvia Chase likewise declared it was "unbearable and lasted for hours," "like someone was gunning a jet engine under our window."  Chase hired an acoustical expert who measured the equipment noise at 65 decibels on the afternoon of June 9, 2020.  Chase also obtained a personal sound level meter to monitor noise levels and measured as high as 73.5 decibels during the day.

On June 17, 2020, Chase filed an ex parte application for a temporary restraining order and order to show cause for a preliminary injunction enjoining Wizmann from continuing to maintain a noise nuisance.  Chase contended that excessive equipment noise from the Wizmann property interfered with his everyday life and use and enjoyment of his property, depriving

---

[2] The Chases sued for trespass, trespass to timber, nuisance, removal of lateral and subjacent support, negligence, and fraudulent transfer.  (*Chase v. Wizmann* (June 25, 2019, B290131) [nonpub. opn.] [2019 Cal.App.Unpub. LEXIS 4274*; 2019 WL 2590166] rehg. den. July 16, 2019.)  The Chases subsequently filed an amended complaint adding the Wizmanns' adult daughter and Mount Management, Inc. as defendants. (*Ibid.*)

him from rest, sleep, opening windows, and using the balcony or the outdoors of the property while sheltering at home during the COVID-19 pandemic. Chase declared that the effect of the noise beneath his bedroom created "the impression that the house was on an airport runway." He also contended that the noise violated LAMC section 112.02, subdivision (a), which the parties do not dispute prohibits air conditioning and pool equipment noise above 55 decibels during the day and 45 decibels at night in their neighborhood. (LAMC, §§ 112.02, subd. (a), 111.03.)

Chase requested that the trial court issue a temporary restraining order enjoining Wizmann from operating the equipment above those decibel levels and issue an order to show cause for issuance of a preliminary injunction requiring Wizmann to relocate all mechanical equipment to the south side of the property where there are no neighbors.

On June 22, 2020, the trial court issued a temporary restraining order enjoining Wizmann from operating all mechanical equipment in excess of 55 decibels during the day from 7:00 a.m. to 10:00 p.m. and 45 decibels at night from 10:00 p.m. to 7:00 a.m., pending hearing on the motion for preliminary injunction. The court noted that "[d]efendants provide[d] no evidence disputing that the tenants run the machines constantly," and ordered Wizmann to appear and show cause why the court should not order that the equipment be moved to the other side of the property "if they cannot bring the decibel level of the machinery into compliance with the law." The trial court also ordered the parties to meet with designated experts for each side at the property with the parties' counsel to take measurements of decibel levels together.

5

The experts' meeting and noise measurements occurred on June 25, 2020, and both experts' test results at the property line showed decibel levels that exceeded the legal limits. Chase subsequently moved ex parte to hold Wizmann in contempt for violating the temporary restraining order. In opposition, Wizmann claimed he was making good faith efforts to reduce the noise and that certain combinations of equipment could be run without violating the decibel limits. Wizmann requested two and a half months until expiration of his tenants' lease to move the equipment and to reduce the noise level, so that his tenants could have uninterrupted air conditioning during the summer months. Wizmann declared that relocation of air conditioning condensers was a very large job which would require time, breaking the walls, and a city permit.

On June 29, 2020, the court found that the temporary restraining order was intentionally violated by Wizmann and his tenants and scheduled a hearing on the order to show cause for contempt (which was continued and is not a subject of this appeal).

By July 10, 2020, Wizmann had relocated his two air conditioning condensers to a ledge on the west side of the house and made other improvements to mitigate the equipment noise.

On July 13, 2020, after the air conditioning units were moved, new sound measurements were performed by both experts. Measurements were taken during the day at the property line in Chase's backyard, at the property line in the side yard where the earlier measurements had been performed, and near Chase's patio door.

With all the pool equipment turned off and one air conditioner condenser running, Chase's expert measured

45 decibels in the backyard and 46 decibels with two condensers running; Wizmann's expert measured 45 decibels in the backyard for a single condenser running and 48 decibels for both. With two condensers and the filtration and spa pumps running, Chase's expert measured 56 to 57 decibels in the side yard and 50 to 51 decibels in the backyard; Wizmann's expert measured 49 decibels in the side yard and 52 decibels in the backyard. With two condensers, the filtration and spa pumps running, and the waterfall running, Chase's expert measured 57 decibels in the backyard, 57 to 60 decibels in the side yard, and 50 decibels at the patio door; Wizmann's expert measured 57 decibels in the backyard and 54 decibels in the side yard. With two condensers, the filtration and spa pumps running, the waterfall running, and the spa heater running, Chase's expert measured 57 decibels in the backyard and in the side yard, and 51 decibels at the patio door; Wizmann's expert measured 57 decibels in the backyard and in the side yard.

Both sides agreed that many of these decibel levels still exceeded the limits of 45 decibels at night and 55 decibels during the day allowed by LAMC section 112.02, subdivision (a).

On July 16, 2020, Chase was awakened before 6:00 a.m. by equipment noise.

III.   **The Preliminary Injunction**

On July 20, 2020, the trial court granted the preliminary injunction and ordered the equipment moved to the south side of the property.

On the likelihood of prevailing on the merits, the trial court found that "[p]laintiffs' evidence shows they are likely to win at trial on the claim that the machines' noise is 'injurious to health,' 'indecent or offensive to the senses,' or 'interfere[s] with the

7

comfortable enjoyment of life or property' " under Civil Code section 3479.

The trial court noted that according to Wizmann's own acoustical consultant, "the only machines that could run at night without violating the Municipal Code's noise ordinance were the air conditioning condensers." Although "[s]ome combination of machines could be operated during the day" without violating LAMC section 112.02, subdivision (a), this was true only if the motor speed settings of the variable speed pool pumps were operating at the same or lower speed as when measured.

In any event, the trial court found that compliance with the LAMC does not constitute a defense to the nuisance claims. The court explained: "Though Municipal Code section 112.02(a) prohibits operation of machines above a certain decibel level, it does not expressly authorize operation of machines below that level. Noise can constitute a nuisance under Civil Code Section 3479 even if it does not violate Municipal Code section 112.02(a)." Noting that Chase and his wife described the noise directly outside their bedroom window as "unbearable," that Chase was unable to rest, sleep, or open the window, and that even after mitigation efforts Chase was awakened before 6:00 a.m. by equipment noise, the court concluded Chase was likely to win at trial.

Considering the balance of harm, the trial court found that the evidence "strongly favors granting the injunction. The only harm defendants have shown would occur from ordering to move the machines would be financial. . . . Any harm to them could be remedied after trial. Denying the injunction, meanwhile, would result in plaintiffs continuing to regularly suffer from offensive

8

noise that interferes with the enjoyment of their home and wellbeing."

Accordingly, the trial court granted the preliminary injunction and ordered Wizmann to "move all air conditioning and pool equipment and machinery and waterfall pumps" to the south side of the property.

This appeal followed, and the injunction was stayed.

## DISCUSSION

### I. Standard of Review

" 'Pursuant to long-standing Supreme Court case law, "trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued." [Citation.] We review a trial court's application of these factors for abuse of discretion.' " (*Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th 1086, 1092.) The party challenging the injunction has the burden to make a clear showing of an abuse of discretion, and "[a] trial court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.)

Additionally, "questions underlying the preliminary injunction are reviewed under the appropriate standard of review. Thus, for example, issues of fact are subject to review under the substantial evidence standard; issues of pure law are

9

subject to independent review." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136–1137.)

## II.    Nuisance Law

Under the Civil Code, a private nuisance includes "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." (Civ. Code, § 3479.) " '[E]xcessive and inappropriate noise may under certain circumstances constitute an interference with the present enjoyment of land amounting to a nuisance.' " (*Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248, 264 (*Mendez*) [citing cases].)

To prevail on an action for private nuisance, a plaintiff must first prove an interference with the plaintiff's use and enjoyment of his or her property. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 (*San Diego*).) Second, "the invasion of the plaintiff's interest in the use and enjoyment of the land [must be] *substantial*, i.e., that it cause[s] the plaintiff to suffer 'substantial actual damage.' " (*Ibid*.) Third, " '[t]he interference with the protected interest must not only be substantial, but it must also be *unreasonable'* [citation], i.e., it must be 'of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.' " (*Ibid*.; accord, *Mendez, supra,* 3 Cal.App.5th at pp. 262–263.)

"[T]he elements of substantial damage and unreasonableness necessary to making out a claim of private nuisance are questions of fact that are determined by considering all of the circumstances of the case" according to an objective

10

standard:  Specifically, whether a person of " 'normal health and sensibilities living in the same community' " would be substantially damaged by the interference and whether an impartial reasonable person would consider the interference unreasonable.  (*Mendez, supra,* 3 Cal.App.5th at pp. 263–264; *San Diego, supra,* 13 Cal.4th at pp. 938–939.)

III.   **The LAMC Does Not Preclude Nuisance Actions for Equipment Noise that Does Not Violate Section 112.02, Subdivision (a).**

Wizmann's primary argument is that as a matter of law the equipment noise was not subject to nuisance liability because "virtually none" of the equipment noise rose beyond the decibel levels specified in LAMC section 112.02, subdivision (a).

The LAMC states:  "It shall be unlawful for any person, within any zone of the city to operate any air conditioning, refrigeration or heating equipment for any residence or other structure or to operate any pumping, filtering or heating equipment for any pool or reservoir in such manner as to create any noise which would cause the noise level on the premises of any other occupied property or if a condominium, apartment house, duplex, or attached business, within any adjoining unit to exceed the ambient noise level by more than five (5) decibels." (LAMC, § 112.02, subd. (a).)  The parties agree that "presumed ambient noise" levels of 40 decibels at night and 50 decibels during the day apply to their neighborhood, thus pool and air conditioning equipment noise above 55 decibels during the day and 45 decibels at night is prohibited.  (LAMC, §§ 112.02, subd. (a), 111.03.)

Wizmann contends that under Civil Code section 3482, which states that "[n]othing which is done or maintained under

11

the express authority of a statute can be deemed a nuisance," equipment noise that does not violate LAMC section 112.02, subdivision (a), cannot be a nuisance. Although he concedes that the LAMC does not *expressly* state that any equipment noise is permissible so long as it does not violate section 112.02, subdivision (a), Wizmann argues that the ordinance presents a "binary choice" such that this conclusion is necessarily implicit.

We reject this contention. Our Supreme Court has "consistently applied a narrow construction to [Civil Code] section 3482 and to the principle therein embodied." (*Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 100 (*Westchester*).) " ' "A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the *express terms* of the statute under which the justification is made, *or by the plainest and most necessary implication* from the powers expressly conferred, *so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.*" ' " (*Friends of H Street v. City of Sacramento* (1993) 20 Cal.App.4th 152, 160; *Hassell v. San Francisco* (1938) 11 Cal.2d 168, 171.) "A requirement of 'express' authorization embodied in the statute itself insures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded statute a source of undetermined immunity from nuisance liability." (*Varjebedian v. Madera* (1977) 20 Cal.3d 285, 291.)

Thus, no "immunity from traditional nuisance liability" is conferred by statutes or regulations unless they specifically authorize the exact act complained of. (*Westchester, supra,* 26

12

Cal.3d at pp. 101–102 [in airport noise context, "statutes which broadly authorize or regulate airports and aircraft flights do not create a legislative sanction for their maintenance as a nuisance" or "necessarily impl[y] legislative approval of aviation noise which results in interference with neighboring land uses"].)

Moreover, "[e]ven though acts authorized by statute cannot give rise to nuisance liability, 'the manner in which those acts are performed may constitute a nuisance.' " (*Jones v. Union Pacific Railroad Co.* (2000) 79 Cal.App.4th 1053, 1067.) In *Jones,* the Court of Appeal rejected the argument that Civil Code section 3482 precluded railway adjacent homeowners' nuisance action for frequent loud train noise throughout the day and night, including train horns blowing in front of their home for no apparent reason and train engines idling in front of their home for hours and days. (*Id.* at p. 1057.) Although federal regulations authorized railway operation and use of train safety horns above a certain decibel level, a nuisance cause of action could arise from "allegedly unnecessary activity, serving no legitimate purpose, and/or activity allegedly committed for the sole purpose of harassing plaintiffs." (*Id.* at pp. 1065, 1067–1068.)

Here, the LAMC does not expressly immunize all equipment noise below the decibel level proscribed in section 112.02, subdivision (a), nor does it preclude nuisance liability for otherwise excessive or inappropriate equipment noise below that level that unreasonably interferes with the use and enjoyment of property. On the contrary, at the end of the Noise Regulation chapter in which section 112.02, subdivision (a) is found, the LAMC includes a "catchall" provision proscribing "*any* loud, unnecessary, and unusual noise which disturbs the peace or quiet of any neighborhood or which causes discomfort or annoyance to

13

any reasonable person of normal sensitiveness residing in the area," with consideration of a variety of factors, "[n]otwithstanding any other provisions of this chapter." (LAMC, art. 6 (General Noise), § 116.01, italics added.) "The level of noise" is only one among many possible factors, including "proximity of the noise to residential sleeping facilities," "level and intensity of the background noise," "duration of the noise," and "time of the day and night the noise occurs."[3]

---

[3] In full, LAMC section 116.01 states:

"Notwithstanding any other provisions of this chapter and in addition thereto, it shall be unlawful for any person to willfully make or continue, or cause to be made or continued, any loud, unnecessary, and unusual noise which disturbs the peace or quiet of any neighborhood or which causes discomfort or annoyance to any reasonable person of normal sensitiveness residing in the area. The standard which may be considered in determining whether a violation of the provisions of this section exists may include, but not be limited to, the following:

"(a) The level of noise;

"(b) Whether the nature of the noise is usual or unusual;

"(c) Whether the origin of the noise is natural or unnatural;

"(d) The level and intensity of the background noise, if any;

"(e) The proximity of the noise to residential sleeping facilities;

"(f) The nature and zoning of the area within which the noise emanates;

"(g) The density of the inhabitation of the area within which the noise emanates;

"(h) The time of the day and night the noise occurs;

"(i) The duration of the noise;

"(j) Whether the noise is recurrent, intermittent, or constant; and

"(k) Whether the noise is produced by a commercial or noncommercial activity."

Inclusion of catchall language in a statute or regulation indicates that a legislative body does not intend its enumerated provisions to be deemed exclusive. (*Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1019; see *McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1165 [" 'catchall provision' " in statutory scheme " 'legitimizes a myriad of situations the Legislature may not have cared to spell out' "].) In so doing, the LAMC contemplates the possibility of unreasonable noise violations on a case-by-case basis, irrespective of any particular decibel level. (*Mann v. Mack* (1984) 155 Cal.App.3d 666, 674 ["A determination as to what constitutes a 'loud, unnecessary and unusual noise' requires common sense, not a decibel meter"].)

Wizmann contends that the conjunction "and" in "any loud, unnecessary, and unusual noise" limits the scope of LAMC section 116.01 solely to noise that is simultaneously loud *and* unnecessary *and* unusual, thus it should not be read as a catchall provision that applies to every other part of the Noise Regulation chapter. We decline to interpret section 116.01 in so restrictive a fashion. In the same clause pointed to by Wizmann, the word "any" connotes broad applicability. (See *Fierro v. State Bd. of Control* (1987) 191 Cal.App.3d 735, 741 ["The word 'any' has consistently been interpreted as broad, general and all embracing."]; accord, *California State Auto. Assoc. Inter-Insurance Bureau v. Warwick* (1976) 17 Cal.3d 190, 195.) An expansive, not restrictive interpretation is also in line with the broad public policy of the LAMC Noise Regulation, as declared at the beginning of the chapter, "to prohibit unnecessary, excessive and annoying noises from all sources." (LAMC, § 111.00.)

15

Accordingly, we decline to find that LAMC section 112.02, subdivision (a) necessarily implies any decibel-specific limitation on private nuisance actions for equipment noise as a matter of law, especially when read in context of the overall Noise Regulation chapter. (See *Jensen v. iShares Trust* (2020) 44 Cal.App.5th 618, 633 [" ' "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" ' "].) That equipment noise under a certain decibel range may not be illegal under section 112.02, subdivision (a), does not mean it may not otherwise constitute a nuisance, as the trial court correctly concluded. As in cases addressed by other jurisdictions, "[d]efendant has provided no authority suggesting that, absent an ordinance violation, a certain noise level could not be considered a nuisance. Thus, irrespective of an ordinance violation, plaintiff may claim the existence of a nuisance." (*Capitol Props. Group, LLC v. 1247 Ctr. St., LLC* (2009) 283 Mich.App. 422, 429 [770 N.W.2d 105, 110–111]; accord, *Kitsap County v. Kitsap Rifle & Revolver Club* (2014) 184 Wash.App. 252, 280 [337 P.2d 328, 341] ["a nuisance can be found even if there is no violation of noise ordinances"].)

## IV. Substantial Evidence Supports Unreasonable Interference and Substantial Damage to Chase, and the Trial Court Did Not Abuse Its Discretion in Concluding Chase Was Likely to Win at Trial.

Wizmann also contends that there is no substantial evidence supporting unreasonable interference or substantial damage to Chase because the only evidence of damage is from Chase's testimony. He argues that Chase's and his wife's comparisons of the noise to a "jet engine" or "airport runway" are

16

inherently not credible, and indicate that Chase is not reasonable and has a personal vendetta against Wizmann.

However, under California law, the testimony of a single witness, even a party, may alone constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) And absent an express credibility finding, we must infer the trial court resolved questions of credibility in a manner that supports its findings and order. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) "We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Ibid.*) In so doing, we need not infer that the trial court believed the equipment noise reached the actual decibel level of a jet engine, merely that the trial court found the Chases' description of unreasonable disturbance and damage from the equipment noise credible, given all the evidence before the court, including the experts' actual decibel measurements.

Even after some mitigation efforts, it is undisputed that many configurations of the equipment noise still violated LAMC section 112.02, subdivision (a) during both the night and day. According to Wizmann's own expert, the air conditioning condensers could not be operated at the same time as the pool equipment at night without violating the noise ordinance, and only certain combinations of equipment could be operated during the day without violating the noise ordinance (and only if the motor speed setting of the variable speed pumps was the same or lower than when measured). And according to Chase, Wizmann's tenants tended to run all the pool and air conditioning at the same time, especially during the summer months, a configuration

which would undisputedly violate LAMC section 112.02, subdivision (a) at all times of day or night.

The record thus contains substantial evidence of near-constant equipment noise invading Chase's property at all hours, mostly at decibel levels in violation of LAMC section 112.02, subdivision (a). Reasonable persons of normal sensibilities would find this to be an unreasonable amount and duration of noise near their bedroom window and in their yard. And the damage from the constant noise interference described by Chase was substantial, reasonably affecting Chase's everyday life and use and comfortable enjoyment of the property by depriving him from rest, sleep, opening windows, and freely using the balcony or outdoors of the property. Viewing the facts in the light most favorable to Chase, the evidence supports the trial court's conclusion that Chase was likely to prevail at trial. (See *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 301, quoting *City and County of San Francisco v. Evankovich* (1977) 69 Cal.App.3d 41, 54 [" 'The substantial evidence rule applies to preliminary injunctions, as well as the additional rule requiring us, when weighing the question of a trial court's exercise of discretion in granting a preliminary injunction, to view the facts most favorably to the court's disposition' "].)

We also reject Wizmann's argument that the length of time from the installation of the equipment until Chase sought to enjoin the noise in June 2020 suggests Chase's noise concerns are not credible. On the contrary, the record indicates that Chase made ongoing and repeated attempts over several years to address noise concerns at the property—via informal communication with Wizmann and his tenants, formal complaints to the City of Los Angeles and to the police, and via

18

the underlying lawsuit—and sought to enjoin the equipment noise only after failing to reach a resolution directly with Wizmann after the six-month tenants moved in and began operating the equipment around the clock.

Thus, given the substantial evidence supporting unreasonable interference and substantial damage due to the equipment noise, the trial court did not abuse its discretion by concluding that Chase was likely to prevail at trial.

## V.     The Trial Court Did Not Abuse Its Discretion By Concluding that the Balance of Harms Favored Chase.

In balancing the hardships, the trial court stated that the only harm to Wizmann was financial, which could be remedied after trial, whereas denying the injunction "would result in plaintiffs continuing to regularly suffer from offensive noise that interferes with their enjoyment of their home and wellbeing." Wizmann contends that the trial court abused its discretion in granting the preliminary injunction because any noise violation was "minor" and "controllable," and there were less burdensome alternatives than forcing him to relocate all the equipment, such as ordering him to run only certain equipment at certain times.

As previously discussed, there is substantial evidence that the equipment frequently operated all at the same time, at all hours of the day and night, and the trial court did not abuse its discretion in concluding the noise interference was substantial. That some limited combinations of equipment theoretically could operate at decibel levels in compliance with LAMC section 112.02, subdivision (a) does not render the actual interference experienced by Chase "minor," especially since violation of the

ordinance is not a necessary prerequisite to Chase's nuisance claim in the first place.

More to the point, that the noise was to some extent "controllable" does not guarantee that the noise would in fact be adequately controlled if the equipment remained in place. Wizmann had already been ordered to comply with the decibel levels of LAMC section 112.02, subdivision (a), and did not comply:  The trial court found that the temporary restraining order was intentionally violated by Wizmann and his tenants. And even after some mitigation efforts, Chase was awakened before 6:00 a.m. by equipment noise.  Overall, the record reflects endemic noise issues at Wizmann's property and insufficient response by Wizmann and his short-term tenants to Chase's equipment noise concerns.  It seems unlikely that an order restricting the use of the equipment would provide relief to a reliable or significant extent under the circumstances.  In seeking an order that would provide appropriate relief to Chase, the trial court did not abuse its discretion by concluding that if the equipment remained it would result in plaintiffs continuing to regularly suffer from offensive and substantial noise interference.

In sum, the trial court did not abuse its discretion in concluding the balance of harms favored the issuance of a preliminary injunction.

## DISPOSITION

The trial court's order granting the request for a preliminary injunction is affirmed.  Respondents shall recover their costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.